**CENTRAL FALLS FIREFIGHTERS, LOCAL NO. 1485**

v.

**CITY OF CENTRAL FALLS et al.**

**No. 80–252–Appeal.**

Supreme Court of Rhode Island.

Sept. 7, 1983.

Frederic C. Crowley, Pawtucket, for plaintiff.

Daniel K. Kinder, Powers & McAndrew, Providence, for City of Central Falls.

OPINION

SHEA, Justice.

The plaintiff, Central Falls Firefighters, Local No. 1485 (the local) appeals from a judgment by a Superior Court justice sitting without a jury dismissing two complaints against the defendant, the city of Central Falls (the city), and others after a trial on the merits.[1] The case arises out of the implementation of an ordinance passed by the city requiring that firefighters who are disabled be assigned retirement status if they are unable to return to work after eighteen months. The local sought injunctive relief barring the city from implementing this ordinance as well as compensatory and punitive damages. It contended that implementation of this provision was violative of a collective-bargaining agreement

existing between the city and the local. We affirm the judgment below.

The events leading to this litigation span several years. The evidence produced at trial establishes that the parties were signatories to a collective-bargaining agreement that was effective for the period July 1, 1977,—June 30, 1978. In that agreement, article XVII relating to injury or illness in the line of duty, provides in section 1 as follows:

> "Whenever any employee covered by this Agreement shall be wholly or partially incapacitated by reason of injuries received or contracted in the performance of his duties, the City shall during the period of such incapacity, pay said employee the salary to which he would be entitled had he not been so incapacitated and in addition thereto, pay such medical, * * * for such period as is necessary."

Furthermore, article XXIV of that same document defines the duration of that collective-bargaining contract, stating:

> "It is agreed that this Agreement shall be effective as of July 1, 1977, and shall remain in full force and effect until the 30th day of June, 1978, and shall continue and remain in full force and effect from year to year thereafter unless *either party, at least one hundred and twenty (120) days prior to the expiration date in any year, give to the other party written notice of its intention to terminate or end this Agreement.*" (Emphasis added.)

On February 23, 1978 (more than 120 days prior to June 30, 1978), the local notified the city that pursuant to article XXIV it wished to terminate or end the agreement of July 1, 1977, and requested that collective bargaining be undertaken.

The parties began to bargain collectively for a contract effective July 1, 1978, to June 30, 1979, and in the course of such negotiations issues were raised that could not be resolved by the parties. One of the issues

---

1. The defendants named in the original action also include several members of the then city council and the then mayor.

related to the desire of the city to amend article XVII of the agreement to enable the city to cease paying an incapacitated firefighter his full pay by placing him on disability-retirement. This amendment provided that an incapacitated firefighter would be subject to a reduction in pay but would receive not less than 50 percent of his annual salary, regardless of years of service. In June 1978 this provision and other unresolved issues were submitted to arbitration. Coincidentally, while negotiations for this new contract were underway, the city passed ordinance No. 16–100 on May 8, 1978, which in general provided that members of the fire department or the police department who are disabled be given retirement pension status if they are unable to return to work after eighteen months. Once assigned this retirement status, the individual would be subject to a reduction in the amount of his weekly income, but would receive not less than 50 percent of their salary. This ordinance was to become effective July 1, 1978, the same date that the preexisting collective-bargaining agreement expired.[2]

On June 29, 1978, the local filed its first complaint charging that the city's promulgation of this ordinance was tantamount to a number of infractions including breach of the 1977–78 collective-bargaining agreement, tortious interference with business relations, bargaining in bad faith, and a violation of the local's right to due process.

On July 6, 1978, the local and the city appeared before the Superior Court on the local's motion for a preliminary injunction prohibiting the city from implementing the ordinance. Stating that the issue of firefighter's disability should be decided by the arbitrators in the arbitration proceeding in which the parties were already involved, the Superior Court justice denied the motion.

Arbitration proceedings were conducted in mid-July 1978, and on August 9, 1978, the arbitrators made an award. Their decision disallowed the city's proposed amendment permitting a reduction of disability benefits. The arbitrators specifically stated, however, that they did not think it within their jurisdiction to decide and therefore did not resolve the issue of whether an agreed-upon collective-bargaining provision could be modified by enactment of the ordinance. By its terms, the award was to be made retroactive to the period beginning July 1, 1978 and continuing through June 30, 1979. The evidence is undisputed, however, that following the date of this award, a collective-bargaining agreement was never executed by the parties for the employment period of July 1, 1978, through June 30, 1979, as required by G.L.1956 (1979 Reenactment) § 28–9.1–6, for on September 1, 1978 the city petitioned the Supreme Court asking that a writ of certiorari be granted to review the arbitration award.[3]

---

2. The city, prior to enacting this new ordinance, had established a pension fund for its firefighters. See City of Central Falls Ordinances, chapter 9, section 15. The city evidently enacted that ordinance as well as the present one in dispute, pursuant to chapter 702 of the Public Laws of 1925. That statute provides in part:

"Section 1. The city council of the city of Central Falls is hereby authorized and empowered to create and disburse a pension fund or funds for officers and permanent members of the fire department of said city who, by reason of age, physical or mental infirmity, injuries sustained or illness incurred while in the performance of duty, or for other causes, may be unfit to perform active duty.

" * * *

3. In part G.L.1956 (1979 Reenactment) § 28–9.-1–6 states:

"Obligation to bargain.—It shall be the obligation of the city or town, acting through its corporate authorities, to meet and confer in good faith with the representative or representatives of the bargaining agent within ten (10) days after receipt of written notice from said bargaining agent of the request for a meeting for collective bargaining purposes. This obligation shall include the duty to cause any agreement resulting from the negotiations to be reduced to a written contract, provided that no such contract shall exceed the term of one (1) year, unless a

Prior to the filing of this petition, however, the city notified firefighter Henry Petel on August 11, 1978 (two days after the arbitration award), that he would be assigned to retirement-pension status pursuant to the new ordinance. Thereafter, on August 25, 1978, the Superior Court issued a temporary restraining order at the local's request prohibiting the city from implementing the ordinance. Subsequent to the filing of the city's petition on September 13, 1978, a justice of the Superior Court dissolved this order, ruling that the Superior Court lacked authority to interfere in the matter since the arbitration award was to be reviewed by the Supreme Court.

On September 28, 1978, the Supreme Court granted the city's petition for a writ of certiorari to review the award. Simultaneously, the court granted the local's motion to stay the effectiveness of the new ordinance pending review of the arbitrators' decision and thereby enjoined the city from paying any disabled firefighters according to the new disability-pension rate.

Several months later, with the matter still pending in the Supreme Court, the local, by means of a letter from its counsel, notified the city on February 21, 1979 (more than 120 days prior to June 30, 1979), that it wished to engage in collective bargaining to reach a contract for the 1979–80 year. In pertinent part, this letter stated:

"This letter is to notify you that the Union *wishes to terminate or end the existing Agreement that should have been entered into* by and between the Union and the City of Central Falls which should have taken effect on July 1, 1978, pursuant to Article XXIV of the existing Agreement. * * * Also, please be advised that said bargaining agent/unit hereby makes request for collective bargaining with the City of Central Falls." (Emphasis added.)

Following this communication of February 21, 1979, the parties negotiated for an agreement covering the year July 1, 1979—June 30, 1980. According to the testimony of Richard Bessette, then the mayor of Central Falls, the parties did not discuss the question of payments and/or pensions to disabled firefighters during these negotiations. It also is undisputed that the parties agreed upon most items to be included in the 1979–80 agreement but despite these efforts never executed a contract for the 1979–80 year.

Finally, a year later, in January 1980 the local moved to quash the city's writ of certiorari seeking review of the 1978 arbitration award. On February 28, 1980, the Supreme Court of Rhode Island granted that motion and entered an order denying and dismissing its previous order granting the petition for certiorari.

Soon thereafter, on March 14, 1980, the city again sent a letter to firefighter Henry Petel informing him that effective March 21, 1980, he would be returned to retirement status "since there no longer exists any legal restraints."[4] On March 21, 1980, the local filed its second complaint in Superior Court, alleging that the city had violated the 1978 arbitration award by assigning several named firefighters retirement/pension status pursuant to the ordinance. The local's two complaints were consolidated for trial and the matter was heard and decided in April, 1980.

After a detailed review of the evidence, the trial justice found that until June 30, 1978, by virtue of the collective-bargaining agreement existing between the local and the city, any firefighter disabled in the performance of his duties was entitled to be paid his full salary. He also recognized that although the 1978 arbitration award indicated that the disability pension was to

---

longer period shall be agreed upon in writing by the corporate authorities and the bargaining agents, but in no event shall such contract exceed the term of three (3) years."

4. At trial, Mr. Petel testified that from 1972, when he incurred his disability, until March

1980, he collected his full salary. At that latter time, however, he was given retirement/pension status and therefore now receives one-half of the amount he was paid previously.

remain unchanged for the 1978–79 year, the ordinance, which became effective on July 1, 1978, the same day as the new contract would have become effective had it been executed, provided otherwise. The trial justice determined however, that these conflicting provisions did not present an issue to be decided in this case since by its very terms the arbitrators' decision applied solely to the agreement that covered the period July 1, 1978—June 30, 1979. He noted that by its letter of February 21, 1979, the local also elected to terminate the agreement on June 30, 1979. The trial justice proceeded to find that although the terms of a contract for the 1979–80 year were agreed upon orally, those terms did not include any provision for disability. He therefore determined that the city was under no contractual duty to pay incapacitated firefighters the salary they would have received were they not disabled. This being so, the trial justice reasoned that the only issue remaining to be decided was the effect of the Central Falls ordinance in light of the provisions of G.L.1956 (1980 Reenactment) § 45–19–1.[5] He found that this conflict is resolved by the case of *St. Germain v. City of Pawtucket,* 119 R.I. 638, 382 A.2d 180 (1978), and therefore stated that the special legislation authorizing the city's ordinance prevails over the general legislation of § 45–19–1. There being no contractual provision to the contrary, he concluded that the Central Falls ordinances now control the amount of salary entitlement for incapacitated firefighters and therefore denied and dismissed the local's complaints.

Before this court, the local claims the trial justice erred when he found that a contractual obligation to pay incapacitated firefighters no longer existed after June 30, 1979. We disagree.

■ It is well settled that the findings of fact made by a trial justice, sitting without a jury will be accorded great weight. Such findings will not be disturbed on appeal unless they are clearly wrong or it is shown that the trial justice misconceived or overlooked the evidence. *See, e.g. Ferris v. Hawkins,* R.I., 457 A.2d 253, 255 (1983); *Altieri v. Dolan,* R.I., 423 A.2d 482, 484 (1980); *Taffinder v. Thomas,* 119 R.I. 545, 549, 381 A.2d 519, 521 (1977); *see* 1 Kent, *R.I.Civ.Prac.* § 52.5 at 384 (1969).

■ Nevertheless, raising several theories to support its position, the local argues that the parties even now are bound by a contractual obligation to pay full salaried disability, despite a specific provision in the arbitration award fixing its duration solely for the July 1978–June 1979 year. It first asserts that there exists a contract "implied in fact" between the city and the local. Citing with approval this court's decision in *Bailey v. West,* 105 R.I. 61, 64, 249 A.2d 414, 416 (1969), the local argues:

"'A "contract implied in fact" * * * arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts, or, * * * where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract.'"

It concludes, therefore, that mutuality of intent to contract between the parties can be shown in this case since both the local and the city abided by the terms of the last signed contract of 1977–78 and the 1978 arbitrators' decision for more than a year until the Supreme Court quashed the writ of certiorari in March 1980.

Its analysis is flawed for it fails to recognize that upon the local's request, the Supreme Court granted a motion for a stay in September 1978, which enjoined the city from implementing the ordinance until the review of the arbitrators' award was concluded. With such an order in effect, we cannot presume that the city voluntarily complied with the contract provisions regarding disability pay. More probably, the

---

5. General Laws 1956 (1980 Reenactment) § 45–19–1 is a general statute providing that police officers or firefighters of any city or town who are disabled while performing their duties are entitled to full pay during the period of their incapacity. See appendix.

city chose to obey this court's mandate, rather than risk an order of contempt and its accompanying sanctions. We therefore find that no mutuality to contract can be implied from these circumstances.

■ The local next asserts that the city should not be allowed to benefit from "its own wrongdoing" in failing to perfect its appeal and that therefore this court should impose a continuing contract obligation to pay full-salaried disability upon the parties. In support of its position, the local quotes many well-known maxims of equity and apparently relies on the court's general equity jurisdiction to formulate such a remedy.

Presuming for the moment that this court had the power to impose such a remedy, we would not do so in this instance. The local again fails to recognize that it was its own action, when moving to quash the writ of certiorari in January 1980, rather than any "wrongdoing" of the city in failing to prosecute the case that now enables implementation of the ordinance. Once the local's motion was granted, the order granting the stay by its terms was dissolved. It would be difficult, in fact, to conclude that the city perpetrated any wrongdoing, for it opposed the dismissal of the case before the Supreme Court, stating that its failure to prosecute the case was the result of organizational changes within its solicitor's office. The local's appeal therefore on this ground must fail.

Finally, the local asserts that the city should be precluded from conferring retirement/pension status on disabled firefighters pursuant to the ordinance arguing that the March 1980 order of this court only quashed the writ of certiorari, and did not address the subject of the stay. It therefore contends that the stay enjoining the city from effectuating its ordinance is still intact. We again cannot agree.

The local in its motion requested "a stay or an injunction against the City *pending* the *City's appeal* of the *Arbitrator's* [sic] *Award* and *Decision*" pursuant to Rule 8 of the rules of this court. The court granted the local's prayer in September 1978. That appeal is no longer before the court, having been dismissed on February 28, 1980, and consequently, by its terms, the order of this court granting such a stay has expired.

■ There is no indication in the record, that this court intended to bind the city beyond the pendency of the appeal. In fact, even if we agreed with the local's contention that such a protracted stay was intended, according to our prior decisions the order lacked the specificity necessary to be enforceable beyond the period of the appeal. *See generally Cranston Teachers Association v. School Committee of Cranston,* R.I., 416 A.2d 1180, 1183–84 (1980).

■ Today we find that ample evidence exists to support the trial justice's finding that the city is not under contractual obligation to pay disability to the firefighters. We also conclude he was eminently correct when ruling that the only issue remaining to be decided was the effect of the special legislation of P.L.1925, ch. 702 and the city's ordinance concerning disability in light of our general statute § 45–19–1. Since we concur with the trial justice's finding that the present case is controlled by our previous decision in *St. Germain v. City of Pawtucket,* 119 R.I. 638, 382 A.2d 180 (1978), the provisions of the Central Falls ordinances prevail over the general legislation of § 45–19–1 and therefore dictate the amount to be paid that city's incapacitated firefighters.

■ Finally, the local raises the question of whether a person, disabled while a collective-bargaining agreement is in effect, will receive his full pay while he is disabled and whether that right will inure to him forever. This issue was not raised at the trial level, and we see no reason to depart from our well-settled principle that we shall not consider such an issue for the first time on appeal. *See, e.g., Ludwig v. Kowal,* R.I., 419 A.2d 297, 302 (1980); *Russell v. Kalian,* R.I., 414 A.2d 462, 465 (1980).

For the foregoing reasons, the plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of this case are remanded to the Superior Court.

### APPENDIX

General Laws 1956 (1980 Reenactment) § 45–19–1 provides:

"Salary payment during line of duty illness or injury.—Whenever any police officer, fireman or crash rescue crewman of any city, town or the state of Rhode Island shall be wholly or partially incapacitated by reason of injuries received or sickness contracted in the performance of his duties, the respective city, town or state of Rhode Island by which said police officer, fireman or crash rescue crewman is employed shall, during the period of such incapacity, pay such police officer, fireman or crash rescue crewman the salary or wage to which the said police officer, fireman or crash rescue crewman would be entitled had he not been so incapacitated, and in addition thereto shall pay such medical, surgical, dental, optical, or other attendance or treatment, nurses and hospital services, medicines, crutches and apparatus for such period as is necessary, except that if any said city, town or the state of Rhode Island shall provide said police officer, fireman or crash rescue crewman with insurance coverage for the above related treatment, services, or equipment, then said city, town or the state of Rhode Island shall only be obligated to pay the difference between the maximum amount allowable under said insurance coverage and the actual cost of said treatment, service or equipment. In addition, said cities and towns shall pay all similar expenses incurred by a member who has been placed on a disability pension and suffers a recurrence of the injury or illness that dictated his disability retirement. As used in this section, the term 'police officer' shall mean and include any chief or other member of the police department of any city or town regularly employed at a fixed salary or wage. As used in this section, the term 'fireman' shall mean and include any chief or other member of the fire department of any city or town.

As used in this section, the term 'crash rescue crewman' shall mean and include any chief or other member of the Emergency Crash Rescue Section, Division of Airports, Department of Transportation of the State of Rhode Island regularly employed at a fixed salary or wage."