Walter TREMBLEY et al.

v.

CITY OF CENTRAL FALLS et al.

No. 81–473–Appeal.

Supreme Court of Rhode Island.

July 18, 1984.

Edward J. Mulligan, Pawtucket, for plaintiffs.

Raymond P. Cooney, City Sol., for defendants.

## OPINION

MURRAY, Justice.

This is an appeal from a judgment entered by a Superior Court justice sitting without a jury, upholding the decision of the Central Falls Board of Pensions and Retirement to place the plaintiffs on disability-retirement status. The facts are undisputed.

The City of Central Falls (hereinafter the city) was authorized by the Legislature to establish a pension fund for its police officers by virtue of a special act passed in 1925. *See* P.L.1925, ch. 703.[1] Pursuant to this authorization, the city established a pension fund. In 1944, the Legislature enacted the forerunner to G.L.1956 (1980 Reenactment) § 45–19–1, P.L.1944, ch. 1479, a general statute providing that police officers or firefighters of any city or town who are disabled while performing their duties are entitled to full pay during the period of their disability. On May 8, 1978, the city passed ordinance No. 16–100, which in general provided that members of the fire department or the police department who are disabled in the line of duty be given retirement-pension status if they are unable to return to work after eighteen months of continuous disability. Once assigned re-

tirement status, a police officer or firefighter disabled in the line of duty would be subject to a reduction in the amount of his weekly income but would receive not less than 50 percent of his former salary.

The plaintiffs, both members of the Central Falls police department, were injured in the line of duty. Having been disabled more than eighteen months prior to the effective date of ordinance No. 16–100, both plaintiffs incurred a reduction in their weekly income. Pursuant to § 45–19–1, they had been receiving full salary as compensation for their injuries until August 7, 1978, at which time they were involuntarily placed on the city's retirement list. Thereafter, plaintiffs received monthly pensions in accordance with ordinance No. 16–100.[2]

In response to the reduction in their weekly benefits, plaintiffs filed a complaint in Superior Court seeking monetary, declaratory, and injunctive relief. The defendants[3] denied all of the material allegations in plaintiffs' complaint and requested that judgment be entered in their favor plus interests and costs.

This action proceeded to a trial on the merits. After hearing three days of testimony, the trial justice issued a written decision in which he rejected all of plain-

1. Public Laws of 1925, ch. 703 provides in part that

   "[T]he city council of the city of Central Falls is hereby authorized and empowered to create and disburse a pension fund or funds for officers and permanent members of the police department of said city who, by reason of age, physical or mental infirmity, injuries sustained or illness incurred while in the performance of duty, or for other causes, may be unfit to perform active duty."

2. Ordinance No. 16–100 provides that

   "any personnel of the police and/or fire departments who have been away from the job due to sickness or injuries sustained or contracted in the performance of their duties continuously for a period of at least eighteen (18) months prior to the effective date of this ordinance, * * * shall report to active duty within a period of thirty (30) days from the passage of this ordinance and failure to so report shall be deemed prima facie evidence of the fact that they are physically unfit for

   duty and, therefore, unable to return to their regular duties as a policeman and/or as a firefighter. Such persons who shall not return within the thirty (30) days as aforesaid shall be immediately placed on a retirement list and shall receive the regular retirement benefits based upon their wages and other factors, just as if said person had completed all the requirements set forth in the ordinances governing retirement of personnel of the police and/or fire divisions of the City of Central Falls."

3. The defendants named in this suit include (1) the city of Central Falls, (2) Richard Bessette, the mayor and director of public safety of the city, (3) James F. Galligan, the police chief of Central Falls, (4) Martin E. Joyce, Jr., the city's personnel director, (5) Thomas Lazieh, the city clerk of Central Falls, (6) George Gross, the city treasurer of Central Falls, and (7) Maurice N. Hamel, John Sienkiewicz, Carlos A. Silva, Jr., and James Gillan, all members of the City Council of Central Falls.

tiffs' allegations and entered judgment in defendants' favor. On July 31, 1981, plaintiffs filed the instant appeal with this court.

In their brief, plaintiffs cite six reasons why we should reverse the decision of the trial justice. In appropriate order, these include the following arguments: (1) the City Council of Central Falls lacked the authority to pass ordinance No. 16–100 because it contravened a state statute; (2) the trial justice erred in ruling that the Confidentiality of Health Care Information Act had not been violated by certain defendants; (3) the ordinance violated plaintiffs' constitutional right of due process of law because it provided for the termination of employment without a hearing; (4) the ordinance violated plaintiffs' due-process rights because of its vagueness; (5) the ordinance denied plaintiffs equal protection of the laws because it was arbitrary and unreasonable; and (6) the trial justice erred in finding that plaintiffs had not been denied their civil rights under 42 U.S.C.A. § 1983 (West.1981). After reviewing the record and relevant authorities, however, we find that none of plaintiffs' arguments provide any grounds for reversal.

■ Resolution of plaintiffs' first ground of appeal is controlled by our decision in *Central Falls Firefighters Local No. 1485 v. City of Central Falls*, R.I., 465 A.2d 770 (1983). That case involved a challenge by the firefighters of the city of Central Falls to the same ordinance at dispute here. In addressing the firefighters' argument that the new ordinance contravened § 45–19–1 and was therefore void, we held that the provisions of the special legislation of P.L. 1925, ch. 702 prevail over the general legislation of § 45–19–1. *Id.* 465 A.2d at 775.

We see no reason to reverse the position we adopted on this question less than one year ago. The city of Central Falls had the authority to enact ordinance No. 16–100 pursuant to the enabling legislation contained in P.L.1925, ch. 702–03. The provisions of that enabling legislation prevail over the general legislation of § 45–19–1. *Id.*

Plaintiff Crawley next argues that defendants' denial of his petition for reinstatement was based upon defendants' procurement of confidential health-care information in violation of G.L.1956 (1976 Reenactment) § 5–37.3–4(a).[4] The facts underlying his argument relate to a visit Crawley made to his treating physician, Dr. Blas Moreno, and a subsequent conversation that Dr. Moreno had with Mayor Bessette. In July 1978 Crawley was being treated by Dr. Moreno for a heart and lung condition. On July 13, 1978, Crawley traveled to Dr. Moreno's office to obtain a written statement that he was physically able to return to his work as a police captain. Doctor Moreno testified that Crawley had described to him the nature of his police work as primarily administrative, and not involving an excessive amount of heavy activity or strain upon his heart or lungs. Relying upon Trembley's description of his regular police duties, Dr. Moreno provided him with the statement he desired.[5]

On July 14, 1978, Dr. Moreno received a telephone call from Mayor Bessette. In the course of this conversation, the mayor informed Dr. Moreno that Crawley's position as a police captain involved full police duties, not just administrative work. The mayor then asked him if he still believed Crawley was physically able to return to work. Having received this new information, Dr. Moreno retracted the medical

---

**4.** General Laws 1956 (1976 Reenactment) § 5–37.3–4(a) provides in pertinent part that "a patient's confidential health care information shall not be released or transferred without the written consent of such patient or his authorized representative * * *."

**5.** This statement was introduced as a full exhibit by plaintiffs' counsel and is reproduced here.

"July 31, 1978, To whom it may concern: Mr. John P. Crawley of 96 Summer Avenue in Central Falls, Rhode Island has been under my medical care because of an old heart attack and chronic lung disease. At the present time he is stable, feels very well and he has very little symptoms. He is able to resume his full police duties as of the 31st of July, 1978."

statement that he had previously issued to Crawley and advised the mayor to consider it invalid. Doctor Moreno unequivocally stated that if Crawley were to engage in full police duties (i.e. arresting people, answering emergency calls, using a gun), his health would be endangered. Consistent with Dr. Moreno's advice, the mayor and the chief of police of Central Falls refused to permit Crawley to return to his previous position as a police captain. Crawley now argues that this refusal was based upon the receipt of confidential health-care information by Mayor Bessette from Dr. Moreno in violation of § 5–37.3–4(a).

The trial justice found under these facts that no violation of § 5–37.3–1—§ 5–37.3–11 had occurred. With this finding, we fully agree.

The purpose of the Confidentiality of Health Care Information Act "is to establish safeguards for maintaining the integrity of confidential health care information that relates to an individual." Section 5–37.3–2, as enacted by P.L.1978, ch. 297, § 1. The general thrust of the act is aimed at prohibiting third-parties from engaging in the solicitation and procurement of confidential health care information from health care providers without a patient's consent. It is not aimed at situations like the one before us in which a patient obtains a medical report from his treating physician and then voluntarily delivers that report to his employer without placing any restrictions upon its use or upon any further inquiry by his employer into his present medical condition. To argue that this information is confidential in nature as Crawley now does is to urge that we reach an absurd or

unreasonable result in interpreting the legislative enactment.[6]

■ ■ This we will not do where such a holding would be plainly inconsistent with the general purposes of the Confidentiality of Health Care Information Act. As we have stated many times, the ·Legislature should never be presumed to enact laws that lead to absurd or unreasonable results. *Colletta v. State*, 106 R.I. 764, 765, 769, 263 A.2d 681, 684 (1970); *Wilkinson v. Harrington*, 104 R.I. 224, 239, 243 A.2d 745, 753 (1968); *Deignan v. Cowan Plastic Products Corp.*, 99 R.I. 193, 197, 206 A.2d 534, 536 (1965). Statutes are not to be construed in such a manner that they achieve meaningless or absurd results. *Town of Scituate v. O'Rourke*, 103 R.I. 499, 512–13, 239 A.2d 176, 184 (1968). Confidential health care information, therefore, does not include a medical report that a patient directly procures from his own physician and personally delivers to a third-party employer. Nor does it include any information that the employer may have obtained pursuant to the implied authorization of his employee-patient to inquire of his doctor directly concerning the details of said report.

The crux of plaintiffs' third claim of error is that their transfer from full disability to retirement status pursuant to ordinance No. 16–100 violated their rights of due process of law under the Fourteenth Amendment. Specifically, plaintiffs contend that their due-process rights were violated because they were not afforded a hearing by the city either before or after their transfer to retirement status. It is their belief that such a hearing was required under the due-process clause because they have a

---

6. We note the trial justice's recognition of this absurdity when he rejected Crawley's argument on this point:

"The Court is convinced that in the situation presented here the mayor had every right to inquire of the doctor regarding the facts on which he based his medical opinion. Certainly, Mr. Crawley had authorized, and had in fact asked the doctor to write to the city about his health and medical problems. The physician had reported originally to the city au-

thorities regarding Mr. Crawley's status and repeatedly invited further inquiry if further information was needed. The letter in question that said Mr. Crawley could return to full police duties was sent to the city authorities at Mr. Crawley's request. To hold that any statute in this State, such as the Confidential Health Information Act, would put the city in the straight jacket and bind them to the information in the doctor's letter without the ability to inquire as to its validity is nonsensical."

protected property interest in remaining on full-disability status.

The federal cases make it clear that neither plaintiff was entitled to a hearing before his transfer to retirement status on the city's employment rolls. In *McFarland v. United States*, 517 F.2d 938, 207 Ct.Cl. 38 (1975), the United States Court of Claims was faced with a situation that was substantially similar to the one before us.[7] In addressing the argument that a federal employee was entitled to a hearing prior to her retirement for disability, the Court of Claims stated that "it is equally clear that plaintiff's claim of [a] constitutional right to a hearing prior to her disability retirement is invalid." *Id.* 517 F.2d at 944.

The *McFarland* court reached this result for two separate reasons, set forth as follows:

1. The range of interests protected by the due-process clause of the Fourteenth Amendment is not infinite, *Id.;*

2. The Supreme Court's opinion in *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), required such a determination.

In *Arnett* a civil service employee was discharged without being afforded a hearing before an impartial agency official prior to removal. In agreeing with the Court's dismissal of the employee's claim, Justice Powell stated that "[o]n balance * * a prior evidentiary hearing is not required" before discharging a nonprobationary federal employee. *Id.* 416 U.S. at 171, 94 S.Ct. at 1652, 40 L.Ed.2d at 43. (Powell, J. concurring).

Of a similar thrust is the Fifth Circuit's opinion in *Chafin v. Pratt*, 358 F.2d 349 (5th Cir.1966). In that case, another federal civil service employee was involuntarily retired for disability reasons. In weighing the competing interests of the employee and the government, the Fifth Circuit commented that

"it is clear that no hearing was required. Appellant has not lost the right to work elsewhere as a secretary, retirement is certainly less drastic than outright discharge, and appellant's retirement for disability, even if interpreted as she does to be a finding of mental incompetence, casts no aspersion on her moral character or loyalty. And certainly the Government has the paramount interest of any employer in securing efficient employees." *Id.* at 357.

The plaintiffs attempt to distinguish these federal cases upon the ground that they all involved employees who were discharged or retired under the provisions of the Federal Civil Service Act (FCSA). The substance of their argument is that the FCSA, being subject to the Administrative Procedure Act (APA), affords a hearing to all federal employees who are involuntarily discharged or retired by their employer, unlike the ordinance at issue here. The plaintiffs fail to recognize, however, that in none of these cases were any hearings held prior to the employee's involuntary retirement or dismissal. And in all these cases, such procedures were found to be constitutionally sound under the due-process clause.

Furthermore, this court recently applied an approach similar to that employed in *Chafin* in reviewing a case involving an alleged denial of procedural due process. In *John J. Orr & Sons, Inc. v. Waite*, 479 A.2d 721 (R.I.1984), we utilized an analysis that balanced the governmental interests with the private interests *at stake* to determine whether a constitutional violation had occurred. For this reason, we must reject plaintiffs' argument that the principles set

---

7. In *McFarland v. United States*, 517 F.2d 938, 207 Ct.Cl. 38 (1975), a federal employee was involuntarily retired from her position as an accounting technician at Patrick Air Force Base in Florida. Following her emphatic refusal to apply for disability retirement status on her own, her supervisors filed an application with the Civil Service Commission (CSC) to place her upon disability retirement. Pursuant to established procedures, the CSC approved her supervisors' application and retired her for an apparent mental disability. It was undisputed that this plaintiff was never afforded a hearing by the CSC.

forth in *McFarland* and *Chafin* are not properly applied to the facts of this case. We hold, therefore, that plaintiffs were not entitled to a hearing prior to their transfer from full disability to retirement status.

The plaintiffs pose a slightly different question when they argue that the city denied them their due-process rights by not affording them even a posttransfer hearing. It is plaintiffs' contention that a post-transfer hearing is plainly required under the due-process clause. As we have recently stated in *Orr*, however, the fundamental protection afforded by the due-process clause of the Fourteenth Amendment is the opportunity for an individual aggrieved by certain governmental conduct to be heard "at a meaningful time and in a meaningful manner." *John J. Orr & Sons, Inc. v. Waite*, at 723 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66 (1965)).

■ In the instant case, such an opportunity was afforded to plaintiffs. Subsequent to their transfer from full disability to retirement status, both plaintiffs were afforded a full trial in the Superior Court to challenge the propriety of the city's action. The plaintiffs were given a full hearing before a trial justice within less than six months of their transfers. Their hearing lasted three days and spanned 181 pages of transcript. Eleven witnesses were heard by the trial justice, including the mayor of Central Falls, its personnel and finance director, its chief of police, a city council member, and plaintiff Crawley's treating physician. The plaintiffs themselves also testified. The plaintiffs were given the full right of cross-examination at this hearing. Under these facts, it is beyond dispute that the requirements of procedural due process have been complied with by defendants. *See McFarland v. United States*, 517 F.2d at 945 (due-process requirement met where later court proceeding reviewed employee's involuntary retirement by federal agency that had failed to hold any hearings).

■ The plaintiffs next argue that the terms and language of ordinance No. 16–100 are so vague that they are tantamount to a denial of due process. An examination of the ordinance itself, however, demonstrates that this argument is without merit. By its express terms, it applies only to police officers or firefighters who were or are disabled in the line of duty and remain so for eighteen months. Once a police officer or a firefighter has been disabled for an eighteen-month period and fails to return to work within thirty days of the termination of that period, the ordinance clearly requires that he or she be placed on the city's retirement list. "An unconstitutionally vague statute is one compelling a person of average intelligence to guess and to resort to conjecture as to its meaning and/or as to its supposedly mandated application." *United Nuclear Corp. v. Cannon*, 553 F.Supp. 1220, 1233 (D.R.I.1982) (citing *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926)). Such is not the statute before us. Where the terms of an ordinance are unambiguous on their face, as they are here, that ordinance does not violate the due-process clause of the Fourteenth Amendment.

The plaintiffs also challenge the constitutionality of the ordinance on equal-protection grounds. However, "[a] fundamental principle of equal protection analysis is that not all legislative classifications are impermissible." *Boucher v. Sayeed*, R.I., 459 A.2d 87, 91 (1983).

"[W]here it has not been shown that a 'fundamental right' has been affected or that the legislation sets up a 'suspect classification,' a statute will be invalidated on equal protection grounds only if the classification established bears no reasonable relationship to the public health, safety, or welfare. *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Similarly, where the challenged statute is not a capricious exercise of the lawmaking power, there is no violation of the Rhode Island Constitution, article I, § 2, which is essentially

a guarantee of equal protection of the laws." *Sweetman v. Town of Cumberland,* 117 R.I. 134, 151, 364 A.2d 1277, 1288 (1976) (citing *Gomes v. Bristol Mfg. Corp.,* 95 R.I. 126, 184 A.2d 787 (1962)).

■ The right to employment in a city job is not fundamental under the equal-protection clause. *See United Building and Construction Trades Council of Camden v. Mayor and Council of Camden,* 88 N.J. 317, 343, 443 A.2d 148, 161 (1982), *rev'd on other grounds,* — U.S. —, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984). The plaintiffs are not members of a " 'discrete and insular minority' " entitling them to classification as a suspect group. *See Regents of the University of California v. Bakke,* 438 U.S. 265, 290, 98 S.Ct. 2733, 2748, 57 L.Ed.2d 750, 771 (1978) (quoting *United States v. Carolene Products Co.,* 304 U.S. 144, 152 n. 4, 58 S.Ct. 778, 783–84 n. 4, 82 L.Ed. 1234, 1241–42 n. 4 (1938)). Consequently, unless plaintiffs can demonstrate that ordinance No. 16–100 is not reasonably related to the public health, safety, or welfare of the citizens of Central Falls, their equal-protection argument must fail.

■ Reviewing the record before us, we find that plaintiffs have made no such showing. First, the stated purposes of the ordinance itself reflect the obvious relationship of the ordinance to legitimate public purposes. Enhancing the quality of police and fire services afforded the citizens of Central Falls and promoting efficiency in the management and operation of both departments in that city are clearly two goals directly related to the public health, safety, and welfare of the city.

Secondly, we cannot find that the classification scheme provided for in the ordinance bears no reasonable relationship to the promotion of the public good. Police officers and firefighters who are unable to work for over eighteen months because of on-the-job injuries—and yet receive 100 percent of their salaries—represent drains upon the financial resources of their respective city departments. These individuals receive compensation for services that they have performed in the past and for which they have previously been compensated. Despite this additional compensation, however, no corresponding benefits are conferred upon the citizens of Central Falls. Nor will they confer any future benefits upon said citizens unless they are able to and do return to their former jobs. Under these facts, it requires only an application of elementary economics to discern that more of the city's financial resources must now be expended to support the same level of services that the city's citizens had been receiving before plaintiffs incurred their injuries.

We do not think it unreasonable for the city to have concluded, therefore, that the transfer of plaintiffs from full disability to retirement status more accurately reflected their present service contribution to the citizens of Central Falls. Although there may exist less onerous means to attain the stated purposes of ordinance No. 16–100, we cannot say that the classification scheme presently employed bears no reasonable relationship to the public health, safety, or welfare of the citizens of Central Falls. And we certainly believe that the city rightfully asserts its paramount interest in securing a staff of efficient police employees. *See Chafin v. Pratt,* 358 F.2d at 357.

■ The final argument that we must address is the plaintiffs' contention that the defendants deprived them of their civil rights when they transferred them from full disability to retirement status. In order for a plaintiff to recover in a civil action for deprivation of rights under 42 U.S.C.A. § 1983, he or she must demonstrate that a defendant has denied him or her rights protected by the Constitution and laws of the United States. "The first inquiry in any § 1983 suit * * * is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws [of the United States].' " *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433, 439 (1979). A necessary predicate to any action brought under 42 U.S.

C.A. § 1983 is a finding that an individual has been or will be deprived of a federally protected right. *Martinez v. California,* 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481, 488 (1980); *Santiago v. City of Philadelphia,* 435 F.Supp. 136, 150 (E.D. Pa.1977). As our earlier discussion demonstrates, the plaintiffs have made no such showing in this case. Their transfer from full disability to retirement status on the personnel records of the city did not violate any rights that they possessed under the due-process or equal-protection clauses of the Fourteenth Amendment. Nor did it deny them any other federal rights. Consequently, the plaintiffs have failed to establish that they are entitled to recover under 42 U.S.C.A. § 1983.

For the reasons stated, the plaintiffs' appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of this case are remanded to the Superior Court.

SHEA, J., did not participate.