Cheryl A. **EMBREY**

v.

Richard J. **ORTIZ** et al.

No. 85–515–Appeal.

Supreme Court of Rhode Island.

March 10, 1988.

Scott Umsted, Jr., Newport, for plaintiff.

Joseph C. Salvadore, Providence, Gregory Fater, Newport, Paul V. Reynolds, Providence, Joseph T. Houlihan, Vernon A. Harvey, Newport, for defendants.

OPINION

KELLEHER, Justice.

The plaintiff in this dram shop dispute, Cheryl Embrey (Embrey), challenges the application of a negligence standard that holds a licensed furnisher of alcoholic beverages liable under our former dram shop law if the furnisher knew or should have known that the person served was already intoxicated. Embrey argues that a more stringent, "strict liability" standard should have applied when this case came on for trial in Superior Court.

Embrey suffered severe personal injuries on September 19, 1980, in the city of Newport, when as a pedestrian she was struck by the automobile operated by Richard J. Ortiz (Ortiz) as she was crossing Memorial Boulevard. Although Embrey was successful in her suit against Ortiz, who conceded that he was "inebriated" at the time of the incident, she now appeals from a Superior Court jury verdict in favor of the owners of several licensed drinking establishments where Ortiz was served alcoholic beverages on the night of the mishap.

In 1981 Embrey brought suit against two Newport restaurants[1] under our former Dram Shop Act, G.L. 1956 (1976 Reenactment) § 3–11–1, which provided as follows:

> "Liability of furnisher of beverages for injuries by intoxicated persons. —If any person in a state of intoxication commits any injury to the person or property of another, the person who furnished him with any part of the beverage which occasioned his intoxication, *if the same was furnished in violation of this title,* shall be liable to the same action by the party injured as the person intoxicated would be liable to; and the party injured, or his or her legal representative, may bring either a joint action against the person intoxicated and the person who furnished the beverage, or a separate action against each." (Emphasis added.)

---

**1.** Another licensed establishment, the first tavern patronized by Ortiz on the night of the collision, was named in an amended complaint filed in 1982. At the outset of the trial, however, Embrey voluntarily dismissed her claim against this defendant.

Under § 3–11–1, "a vendor of alcoholic beverages is liable to persons suffering injury at the hands of intoxicated persons to whom they have supplied alcoholic beverages in violation of title 3" of the Rhode Island liquor laws. *Pardey v. Boulevard Billiard Club,* 518 A.2d 1349, 1352 (R.I. 1986). The section of title 3 that pertains to this controversy is G.L. 1956 (1976 Reenactment) § 3–8–1, as amended by P.L. 1980, ch. 406, § 1, which provided in its relevant portion that "[l]icenses issued under * * * this title shall not authorize * * * the sale of beverages to any intoxicated persons * * *." The plaintiff asserts that the trial justice erred in not construing the applicable provisions of §§ 3–11–1 and 3–8–1 as imposing strict liability on the dram shop defendants. Embrey also alleges that the trial justice overlooked or misconceived material evidence in denying her motion for a new trial.

Before addressing these contentions, we shall set forth the pertinent facts. At 4:30 p.m. on Friday, September 18, 1980, Ortiz completed his workday in Portsmouth and drove to a nearby liquor store where he purchased a six-pack of beer. After consuming one beer at his apartment in Newport, he placed all but one of the remaining bottles in a cooler on the back seat of his automobile. After drinking his second bottle of beer, Ortiz drove to the Newport waterfront where, at approximately 7 p.m., he entered the first of three local licensed drinking establishments that he would patronize that night.

Ortiz remained for one hour and had at least two drinks at the first tavern. At approximately 8 p.m. he arrived at the second, an establishment owned by two defendants who conducted business as The S.S. Newport Restaurant (The S.S. Newport), where Ortiz was served a minimum of one beer and three mixed drinks. Shortly before 11 p.m. Ortiz left The S.S. Newport and drove to a tavern owned by a corporate defendant doing business as Jimmy's Saloon where he was served at least one additional bottle of beer.

Ortiz left Jimmy's Saloon at 1 a.m. He drove his automobile a short distance on Memorial Boulevard to a point just west of the Easton's Beach parking lot. At that location, Ortiz's vehicle struck Embrey. Moments after impact Ortiz reversed his direction and returned to the location of the collision to assist the injured pedestrian. When the Newport police arrived at the scene at 1:19 a.m., they found Ortiz cradling the injured and unconscious Embrey in his arms.

Ortiz was then placed in police custody on suspicion that he was driving while under the influence of liquor—a violation of G.L. 1956 (1968 Reenactment) § 31–27–2, as amended by P.L. 1980, ch. 321, § 1. He was taken to the Newport police station where he was questioned and given a series of tests. After adequately performing a number of field sobriety tests designed to detect impaired balance and coordination, the suspect provided two breath samples for chemical analysis to determine the alcohol content in his blood.

The first breathalyzer test, which was administered at 2 a.m., yielded a reading of .25 percent alcohol. Another reading taken thirty minutes later indicated a level of .24 percent. However, follow-up tests designed to measure the reliability of the breath analysis machine produced different results after each examination of Ortiz's breath, thereby detecting an error in the breath-analysis procedure.

Ortiz admitted that he felt "buzzed" or "elated" when he left The S.S. Newport at approximately 11 p.m. and that he believed he was "inebriated" when the collision occurred two hours later. There was no evidence, however, that he was visibly intoxicated when he was on the premises of either The S.S. Newport or Jimmy's Saloon. Furthermore, Embrey's expert witness, a professor of pharmacology, conceded that Ortiz would not necessarily appear intoxicated given his estimated rate of alcohol consumption on the night in question.

At the conclusion of fourteen days of trial the jury returned a verdict in favor of Embrey against Ortiz. In response to special interrogatories, the jury attributed 35 percent comparative negligence to Embrey and the award was reduced by that per-

centage. The jury also specifically found by a fair preponderance of the evidence that the dram shop defendants, their agents or servants, neither knew nor reasonably should have known that Ortiz was in a state of intoxication. Acting in accordance with the trial justice's instructions, the jury therefore found the dram shop defendants not guilty of violating § 3–11–1.

One month after the verdict was returned, a hearing was held on Embrey's motion for a new trial against the dram shop defendants. The trial justice denied the motion after reviewing the evidence and "tossing out" the testimony of witnesses he judged to be untruthful. He then determined that "reasonable minds could differ as to what the conclusion of the jury would be" regarding the liability of the dram shop defendants. On appeal Embrey challenges the denial of her motion for a new trial and the negligence standard on which the trial justice predicated his ruling.

Embrey urges us to interpret § 3–11–1 as imposing strict liability on the furnisher of alcoholic beverages to an intoxicated person regardless of the consumer's apparent condition or the server's knowledge of that condition. Under Embrey's standard, if an inebriated barroom patron exhibits no signs of drunkenness and is served one drink, the tavern keeper would be absolutely liable for all injuries proximately caused by the consumer's intoxication.

■■ Although we recognize that § 3–11–1 was to "be construed liberally to further the Legislature's declared purpose of promoting the reasonable control of the traffic in alcoholic beverages," *Beaupre v. Boulevard Billiard Club*, 510 A.2d 415, 416 (R.I. 1986), the statute will not be construed in a way that "lead[s] to absurd or unreasonable results." *Trembley v. City of*

*Central Falls*, 480 A.2d 1359, 1363 (R.I. 1984). Intoxication in many instances is a condition that may not be detected. It is unreasonable to hold the licensee liable for serving intoxicated persons unless the licensee or the licensee's agent knew or should have known that the consumer was inebriated. *See Lawrence v. Anheuser-Busch, Inc.*, 523 A.2d 864, 871 (R.I. 1987). The server cannot be expected to make a determination of sobriety unless the server is familiar with the drinker's previous level of alcohol consumption or unless the drinker manifests such telltale signs of intoxication as swaying or slurred speech.

■ Since one of the purposes of dram shop legislation is to foster responsible serving practices, it would be unjust to attribute liability to faultless furnishers of alcoholic beverages who exercise reasonable and prudent practices. In this dispute, the trial justice correctly instructed the jury concerning the limit of liability imposed on the licensee by the dram shop law. When Embrey failed to demonstrate that any one of the owners or employees of the dram shops knew or should have known that Ortiz was intoxicated when he was served, Embrey failed to prove a requisite element of negligence under our then-existing liquor law.[2]

We now turn to the motion for a new trial. In reviewing such a motion, the trial justice "is to consider in the exercise of his independent judgment all of the material evidence in the case in the light of his charge to the jury and to pass on its weight and the credibility of the witnesses." *Barbato v. Epstein*, 97 R.I. 191, 193, 196 A.2d 836, 837 (1964).

In accordance with this duty, the trial justice discounted most of the testimony

---

**2.** Our former law concerning the liability of licensed furnishers of alcoholic beverages for injuries caused by intoxicated persons, G.L. 1956 (1976 Reenactment) § 3–11–1, was repealed on June 25, 1986 by P.L. 1986, ch. 537, § 2, and replaced by the Rhode Island Liquor Liability Act G.L. 1956 (1987 Reenactment) chapter 14 of title 3. Unlike § 3–11–1, the Liquor Liability Act explicitly imposes liability on "[a] defendant * * * who negligently serves liquor to a visibly intoxicated individual" if the

defendant knows or if a reasonably "prudent person in similar circumstances would know that the individual being served is * * * visibly intoxicated." Section 3–14–6 (2), (3). The 1986 Liquor Liability Act also sets forth the licensee's varying duties of care concerning service of liquor to minors. Actions such as this controversy that accrued before the enactment of the current dram shop law must, however, be brought under the less explicit provisions of § 3–11–1.

given by Ortiz, the licensees and their employees as lacking credibility. Embrey argues that the remaining evidence—the field sobriety tests, the observations of the law enforcement officers who arrested, questioned, and tested Ortiz, the breathalyzer results, and the expert testimony—provides an evidentiary basis to support a finding of dram shop liability. The trial justice, however, also found that the sobriety tests and the attendant observations by the police officers were inconclusive, that the breathalyzer results were unreliable, and that the opinion expressed by Embrey's expert concerning Ortiz's condition on the night in question weighed in favor of the licensees. After independently assessing the testimony, the trial justice concluded that the verdict was not against the fair preponderance of the evidence, *Gardiner v. Schobel*, 521 A.2d 1011, 1015 (R.I. 1987), but was in fact a reasonable response to the evidence presented. We shall not disturb this ruling.

For the foregoing reasons, Embrey's appeal is denied and dismissed. The judgment denying Embrey's motion for a new trial is affirmed.