DECISION
This matter was heard by the court sitting without a jury. Raymond Canario (plaintiff), a former Rhode Island state trooper, has filed the instant action asking the court to award him a disability pension of 75% of his annual salary at the time he was injured. Colonel Edmund S. Culhane (defendant), superintendent of the Rhode Island State Police, refused to grant the plaintiff a disability pension and mandatorily retired the plaintiff. Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
Facts/Travel
A few days before July 6, 1989, the plaintiff was instructed by his superior, Major Lionel Benjamin, to make sure the flags which flew over the Portsmouth State Police Barracks were either down at sundown or illuminated by lights if the flags were still up after sundown. The plaintiff served as the uniform lieutenant in charge of the Portsmouth Barracks for July 6, 1989. On July 6, 1989, while the plaintiff visited the Scituate Barracks, Major Benjamin further exhorted the plaintiff to take care of the flag detail. Instead of returning to the Portsmouth barracks, the plaintiff went straight home after he finished his work at the Scituate barracks. The plaintiff was not scheduled to report for duty for two days. However, the plaintiff was subject to emergency overtime duty and received a 25% built-in overtime allowance in his pay.
Later that night, the plaintiff decided to check the Portsmouth barracks to see if the flag detail had been done. The plaintiff, in plain clothes, and with his wife, first rode his motorcycle to a carnival in Bristol. At the carnival, he and his wife ate dinner. Afterwards the plaintiff and his wife proceeded to the Portsmouth barracks, arriving at approximately 9:45 p.m. At the barracks, the plaintiff observed that the flags had been taken down. The plaintiff did not enter the barracks and did not make an entry in the day sheet to note that he had checked the flags. A trooper had taken down the flags at 5:45 p.m. The plaintiff and his wife soon left the area to return to their home in Riverside. Twenty minutes later, the plaintiff severely injured himself in a motorcycle accident. The plaintiff suffered head injuries which prevented him from resuming his full duties as a state trooper. However, the plaintiff was allowed to perform light duty work at the various barracks, such as taking inventory of supplies and equipment.
In June 1990, while continuing to work in a light duty capacity, the plaintiff requested a disability pension. The superintendent at the time, Colonel Stone, took no action on the request. The plaintiff again requested a disability pension when Colonel Culhane assumed command of the state police in the fall of 1990. Colonel Culhane investigated the plaintiffs claim for a disability pension by gathering information about the plaintiffs accident and questioning state police personnel about the plaintiffs activities on the night of the accident. Colonel Culhane contacted the division physician in regards to the plaintiffs injury. Colonel Culhane also spoke with Major Benjamin and discovered that the major had not given a specific order to the plaintiff to check the flags on the night of July 6, 1989. Culhane further noted that the plaintiff had driven his personal motorcycle with a passenger, rather than driving a police cruiser. According to Culhane, this was a factor which weighed against finding that the plaintiffs accident occurred in the performance of his duty. Colonel Culhane in effect denied the plaintiffs request for a disability pension when he mandatorily retired the plaintiff pursuant to § 42-28-22 (A). The plaintiff qualified for mandatory retirement at half of his salary at the time of retirement as the plaintiff had served at least twenty years (from July 6, 1970 to May 22, 1991). See §42-28-22 (A).
In response, the plaintiff filed the instant action on June 5, 1991, asserting that he was entitled to a disability pension and that his due process rights under the 14th amendment were violated when he was not granted a hearing for his disability pension. The defendants state that the plaintiff, as an at will employee, received all of the process he was due.
Standard of Review
An agency must comply with the Administrative Procedures Act (APA) only if the matter constitutes a "contested case." PropertyAdvisory Group Inc. v. Rylant, 636 A.2d 317, 318 (R.I. 1994). "[A] hearing must be required by law in order for an administrative matter to constitute a contested case." Id. The instant case does not fall under the APA statutory framework as a hearing is not statutorily required in determining the plaintiff's eligibility for a disability pension. See §42-28-21. Therefore, the APA standard of review does not apply.
"[W]hen the [pension] benefit plan gives the administrator or fiduciary discretion to determine benefit eligibility or construe plan terms, [the case of Firestone Tire and Rubber Co. v. Bruch,489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)] and its progeny mandate a deferential "arbitrary and capricious" standard of judicial review." Recupero v. New England Tel. and Tel. Co.,118 F.3d 820, 827 (1st Cir. 1997). The "arbitrary and capricious" review standard applies even with a de novo proceeding. Id. The above standard of review has been applied to plans covered under the Employee Retirement Income Security Act (ERISA). However, the policy considerations mandating such a review standard apply with equal resonance to the instant case. Like a trustee who has great discretion under a trust instrument, the superintendent exercises similar discretion in determining disability pension eligibility.See § 42-28-21 (a). In such situations, courts have traditionally not disturbed the trustee's decision as long as it was reasonable. Firestone, 489 U.S. at 111. In addition, federal courts adopted an arbitrary and capricious standard in reviewing trustees' decisions under Labor Management Relations Act (LMRA) pension plans, as the LMRA contained no explicit authorization for suits against plan trustees. Id. at 109-110. Similarly, the statutory framework for the instant case does not specifically authorize suit for state troopers denied disability pensions, and great deference is accorded the superintendent in employment decisions. See Culhane v. DeRobbio, 649 A.2d 507 (R.I. 1994). For all of the above reasons, this court will reverse the decision of the superintendent in denying the plaintiff a disability pension only if the superintendent's decision was arbitrary and capricious and without rationality.
Disability Pension Determination
The plaintiff argues that he was injured in the performance of his duties. The plaintiff states that he checked the flags at the Portsmouth barracks in response to an order by Major Benjamin. The plaintiff further contends that a police officer is entitled to disability pay when injured while traveling to or from a duty site. The defendants respond that the "going and coming" rule utilized in Workers' Compensation law may be applied by analogy to the instant case. The defendants assert that the plaintiffs injury was outside the scope of his employment under the "going and coming" rule, as it occurred during his ride home. The defendants also state that the superintendent has great discretion in deciding whether to award a disability pension.
Any member of the state police who "shall have in the course of performance of his or her duties suffered injury causing disability . . . [and] whose dependence shall be determined from time to time by the superintendent subject to confirmation by the governor, shall be entitled to an annual pension of seventy-five percent (75%) of the annual salary paid to that member at the time of his or her termination of service by reason of injury . . . ." § 42-28-21 (a). Under this section, the superintendent in conjunction with the governor, decides whether a state trooper is eligible for a disability pension. The statute does not specify criteria for determining whether an activity was "in the course of performance of his or her duties." Neither has the Rhode Island Supreme Court defined what constitutes "in the course of performance of one's duty" in regard to state troopers.
Courts in other states have looked to Workers Compensation law for assistance in ascertaining the meaning of "in the course of employment" clauses for policemen. See Wormstead v. TownManager of Saugus, 322 N.E.2d 171, 175 (Mass. 1975); Board ofTrustees v. Christy, 272 S.E.2d 288, 291 (Ga. 1980). InWormstead, the court found that "the words "in the course of" refer mainly to the time, place, and circumstances of the injury." Wormstead, 322 N.E.2d at 175. The court considered whether the policeman's injury "occurred during a period (1) for which he was being paid, (2) when he was on call, and (3) while he was engaged in activities consistent with and helpful to the accomplishment of police functions" in deciding whether the injury arose out of the performance of his duties. Id. The court found that a police sergeant had been injured in the course of his duties when he was injured while traveling back to the station from an officially sanctioned lunch break at his home. The court specifically rejected the applicability of the "coming and going" rule which disallows recovery for injuries incurred while an employee travels to and from work. The court said that police officers should be included in the class of "traveling workers" exempt from the "coming and going" rule.
However, several other courts have applied the "coming and going" rule to police officers. See Matter of De Jesus v. NewYork State Police, 467 N.Y.S.2d 916 (A.D. 3 Dept. 1983); Stead v.Rockland County, 599 N.Y.S.2d 710 (A.D. 3 Dept. 1993); Kunze v.Columbus Police Dept., 600 N.E.2d 697 (Ohio App. 10 Dist. 1991);Westberry v. Town of Cape Elizabeth, 492 A.2d 888 (Me. 1985). Whether a police officer is in uniform, driving his private vehicle, and on his way home after a shift are relevant considerations in determining whether he was injured in the course of his duties. Matter of De Jesus, 467 N.Y.S.2d at 917;Westberry, 492 A.2d at 891. "To hold that the accident was directly related to claimant's employment as a state trooper because he was subject to 24 hour recall would require a statement by this court that state police, as distinguished from all other state employees, are entitled to automatic statutory protection whenever and however injured. We are not prepared to make that statement." Matter of De Jesus, 467 N.Y.S.2d at 917. The court in Matter of De Jesus found that a state trooper was not injured in the course of his duties when he sustained injures in a car accident while driving home after his shift. The trooper was not in uniform and had operated his private automobile. Id. In Westberry, supra, the Maine Supreme Judicial Court found that a police officer injured while driving home from work was not injured in the course of employment as "[h]e was off duty, not in regulation uniform, and was driving his own car home from work. Further, the police department had little or no control over him at the time of the accident." Westberry, 492 A.2d at 891. In addition, the court noted that the officer "was not on either a specific call or special assignment at the time of the accident."Id. at 892. A combination of factors including off-duty status and the absence of any threat to the public at large can serve to provide a rational basis for denying a disability pension. Kopecv. Kelly, 634 N.Y.S.2d 65 (A.D. 1 Dept. 1995).
In light of the above case law, this court finds that the plaintiff was not injured in the course of his duties as a state trooper. Like the officers in Westberry and Matter of De Jesus
cited above, the plaintiff in the instant case was not in uniform and rode his own personal vehicle (motorcycle) in traveling towards his home when he was injured in a traffic accident. Unless special circumstances exist indicating control or direction by the officer's police department, a police officer's injuries incurred during travel to and from work sites are not considered "in the course of employment." Matter of De Jesus, 467 N.Y.S.2d at 917. In the instant case, the plaintiff was not specifically ordered to check on the flags on the night of July 6, 1989. In fact, the plaintiff could have made sure the flags were taken down at the end of his shift at 5:00 p.m., thus not requiring him to return at 9:45 p.m. The flags were actually taken down at 5:45 p.m., only 45 minutes after the plaintiffs shift had ended. The foregoing demonstrates that the plaintiff was not under the special direction of superiors and hence, no special circumstances existed to abrogate the general rule that the plaintiff cannot recover an "in the course of duty" disability pension for injuries sustained while traveling towards his home.
Even under the Wormstead analytical framework, the circumstances of the plaintiff's case do not militate in favor of finding that his injuries were in the course of performance of his duties. While the plaintiff does receive a 25% built-in overtime allowance which would cover off duty emergency calls, the instant circumstance of checking barracks flags does not constitute an emergency and was not a specifically ordered mission. The last factor stated in Wormstead requires that the police officer be engaged in activity consistent with and helpful to the accomplishment of police functions. While the plaintiff was involved in an activity nominally helpful to the state police in checking the flags, he was neither on a specific mission nor acting in an emergency situation. Under such circumstances, the plaintiff acted on his own free time when he returned towards his home on his motorcycle. Compare Allen v. Board of Selectment ofWeymouth, 448 N.E.2d 782, 783 (Mass. App. 1983) (court found that police officer was injured in the course of employment when he sustained an injury while traveling to his home after having been dispatched on a "special mission" to testify in court). Because this court concludes that the plaintiff's injuries did not arise in the course of performing his duties as a state trooper, this court finds that the superintendent's decision denying a disability pension for the plaintiff pursuant to § 42-28-21
was rational and was not arbitrary and capricious.
Finally, the plaintiff has asserted that the failure of the superintendent to grant him a hearing and the failure of this court to review the instant matter on a purely de novo basis violate the 14th amendment's due process clause. In Trembley v.City of Central Falls, 480 A.2d 1359, 1365 (R.I. 1984), a case involving pension rights, the court decided that a full trial before the superior court had satisfied due process despite the fact that a post-deprivation hearing was not afforded to the plaintiff. In the instant case, the plaintiff was granted a full trial, including the examination of several witnesses. The plaintiff had the right to cross-examine witnesses at the trial. "Under these facts, it is beyond dispute that the requirements of procedural due process have been complied with by defendants."Trembley v. City of Central Falls, 480 A.2d 1359, 1365 (R.I. 1984).
For the above reasons, this court affirms the decision of the superintendent, as the superintendent's decision was rational and was not arbitrary and capricious.
Counsel shall prepare the appropriate order for entry of judgment.