Ellen Seabury HENRY et al,

v.

J. Troy EARHART et al.

No. 86–433–A.

Supreme Court of Rhode Island.

Jan. 19, 1989.

 

Marc B. Gursky, Providence, for plaintiffs.

Forrest L. Avila, Dept. of Educ., Providence, for defendants.

## OPINION

SHEA, Justice.

This is an appeal from a judgment for the defendants entered in the Superior Court which denied the plaintiffs' request for permanent injunction. We affirm the judgment below.

On May 29, 1986, plaintiffs Ellen Seabury Henry, Anne DiMase, Cheryl Lee Curcio, Barbara Deion, Suzanne M. Waterous, Elizabeth Daniels, Karen R. Butterfield, and the American Civil Liberties Union, Rhode Island Affiliate, filed a class action in Providence County Superior Court against defendants J. Troy Earhart, Department of Education of the State of Rhode Island, and Roger Begin. The named plaintiffs alleged that they are members of the class of present and future employees of private nursery schools and other preschool educational programs who are subject to regulations promulgated by defendants Earhart and the Department of Education. The regulations in question, "Regulations Governing Employment Background and Criminal Records Checks Based on Rhode Island Law: Chapter 16–48.1" (hereinafter the regulations), were promulgated, after a public hearing, in April of 1986.

In their complaint plaintiffs alleged that the regulations violate the Administrative Procedures Act, G.L.1956 (1984 Reenactment) §§ 42–35–3(a)(2) and (3), as amended by P.L.1986, ch. 281, § 3, and 42–35–4(b), as amended by P.L.1986, ch. 281, § 4; violate the United States Constitution and the Rhode Island Constitution; conflict with the legislative scheme pursuant to G.L.1956 (1981 Reenactment) chapter 48.1 of title 16, as enacted by P.L.1985, ch. 334, § 3; and exceed the delegated authority of the Department of Education. After a hearing on July 21, 1986, the Superior Court granted plaintiffs' motion for class certification but denied the prayer for

permanent injunction. The plaintiffs appealed.

■ There is no merit to plaintiffs' claim that defendants failed to comply with the Administrative Procedures Act when they promulgated the regulations. Section 42–35–18(a)(28) states:

"And provided further that none of the provisions of this chapter [the Administrative Procedures Act] shall apply to the following sections and chapters:

(28) Chapter 60 of title 16 entitled 'Board of regents for elementary and secondary education.' "

In addition G.L.1956 (1981 Reenactment) § 16–60–10, as amended by P.L.1981, ch. 32, § 3, entitled "Board of Regents for Elementary and Secondary Education," states, "The provisions of the Administrative Procedures Act in chapter 35 of title 42 shall not apply to this chapter." Chapter 60 of title 16 sets forth the duties of the commissioner of education to supervise the operation of the department of elementary and secondary education and to fulfill other duties as defined in title 16 including the duty to interpret school law. *See* § 16–60–6(7) and § 16–60–6(9)(h), as amended by P.L.1985, ch. 75, § 1. Hence the Administrative Procedures Act does not apply to the regulations that were promulgated by the Department of Education pursuant to chapter 48.1 of title 16.

The plaintiffs next allege that the regulations are unconstitutional. Section 7.1.2 of the regulations requires the owner and/or operator of a preschool program to "undergo an employment background check and criminal records check including fingerprinting." Section 7.2.1 requires the same background check, criminal-record check and fingerprinting for all "other persons" including full-time and part-time employees "such as teachers, aides, secretaries, food handlers, bus drivers * * * [v]olunteers and student teachers * * *." However, student teachers, parents, or others who are not present for child task-oriented purposes are excluded from this requirement. Sec-

tion 7.1.5 states that if an owner or operator has been convicted of any felony or misdemeanor other than a stationary traffic offense such conviction amounts to "disqualifying information" that shall be sufficient grounds for the commissioner of education or designee to deny approval of the preschool program. Section 7.2.3 prohibits an operator from hiring or having on the school premises a person whose criminal-record check reveals "disqualifying information." Sections 7.1.7 and 7.2.6 give the disqualified person a right to a hearing before the commissioner of education at which "the burden of proof shall be on the disqualified person to establish by clear and convincing evidence that the offense for which he or she has been convicted is not such a one as to give reasonable cause to fear for the health and welfare of any child placed in his or her care."

The plaintiffs allege, without any supporting authority, that the regulations (1) violate the equal-protection clause of the Fourteenth Amendment and article 1, section 2, of the Rhode Island Constitution because there is no rational relationship between the prior offense and the disqualification; (2) violate the due-process clause because it imposes a presumption of guilt; and (3) violate the constitutional right to privacy and the search and seizure provision of the Fourth Amendment by requiring plaintiffs to undergo employment-history and criminal-record checks and fingerprinting by the Rhode Island State Police without requiring the Department of Education to show probable cause or to obtain a warrant. We disagree.

■ In *Brennan v. Kirby*, 529 A.2d 633, 639 (R.I.1987) we stated:

"It is a well-settled principle of constitutional analysis that legislative enactments are presumed to be constitutional. * * * A party challenging the constitutional validity of an act carries the burden of persuading the court that the act violates an identifiable aspect of the State or Federal Constitution." [1]

---

1. Here, plaintiff objects to regulations promulgated by the commissioner of education rather

than a statute promulgated by the Legislature. However, in *Lerner v. Gill*, 463 A.2d 1352, 1358

However, when the challenger cites no case law and otherwise fails to state the authority upon which he or she relies in challenging the constitutionality of the statute, then the challenger has not met his or her burden. *Newport Auto Salvage, Inc. v. Town Council of Portsmouth,* 502 A.2d 339, 343 (R.I.1985). Here, plaintiffs do not cite any authority whatsoever in their constitutional challenges.

■ Even assuming the proper authority had been cited, we do not find that the constitutional challenges have merit. In *In re Advisory Opinion to House of Representatives,* 519 A.2d 578 (R.I.1987), this court set forth the standard for determining if a statute violates the equal-protection clause. The statute must have a reasonable basis and must not be arbitrary.

The regulations provide that if an owner or operator of a preschool program, or a full-time or a part-time employee, volunteer, or student teacher of a preschool program, has been convicted of a felony or any misdemeanor other than a stationary traffic violation, then that person has "disqualifying information" that will automatically preclude employment at the preschool and may be sufficient grounds for the commissioner of education to deny the owner or operator approval of the program.

The regulations are promulgated pursuant to chapter 48.1 of title 16. Section 16–48.1–2 provides that persons seeking to operate or seeking employment in private nursery schools and programs of educational services to children between three and six years of age and where the programs operate at least one session of less than four hours daily shall undergo an employment-background check and criminal-record check, if such "employment involves supervisory or disciplinary power over a child or children or involves frequent and routine contact with a child or children without the presence of other employees * * *."

Section 16–48.1–2 further states that "[t]he commissioner may by rule identify those positions requiring background checks and criminal record checks." Under § 16–48.1–3 the person seeking approval to operate the facility must submit an affidavit to the commissioner providing "information relating to individual employment history as shall be required *by rule* promulgated by the commissioner." (Emphasis added.) Under § 16–48.1–4 the commissioner is directed to determine *by rule* the type of information appearing on a criminal-record check that constitutes "disqualifying information." Finally, under § 16–48.1–7, "[t]he commissioner is authorized to promulgate rules and regulations to carry out the intent of this chapter."

Comparing the language used in chapter 48.1 of title 16 with the regulations, we find it clear that the objectives of the regulations faithfully follow the purpose of the enabling legislation. *See, e.g., Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). Hence the enabling statute would have to be unreasonable and arbitrary in order for us to find the regulations unconstitutional. The explicit intent of the legislation is to protect young children from the abuse of adults in the preschool setting. Given the legitimate nationwide concern about child abuse and sexual abuse of children, there is a reasonable basis for screening the criminal records of child-care workers. *See, e.g.,* Grubb, *Day–Care Regulation: Legal and Policy Issues,* 25 Santa Clara L. Rev. 303 (1985). Further, the regulations are not arbitrary. They apply to owners, operators, full-time and part-time employees, volunteers, and student teachers but not to "[s]tudent teachers/parents/others who are present solely for observational purposes and not child task-oriented purposes * * *." Section 7.2.1. The regulations screen the individuals who might have an opportunity to harm the

(R.I.1983), we stated, "If a statute expressly delegates power to interpret and define certain legislation to an agency, regulations promulgated pursuant to that power are *legislative rules* having the force of law." (Emphasis added.) We also determined that "[o]nce the validity of

such a [legislative] rule is established, it is as binding on a court as a valid statute." *Id.* Since we believe this is a valid legislative rule, see discussion *infra,* we may apply the constitutional standards set forth in *Brennan v. Kirby,* 529 A.2d 633 (R.I.1987) to this regulation.

children. Such a classification is not arbitrary but rather is directly within the purpose of the enabling legislation. *See* § 16–48.1–2.

■ The plaintiffs also argue that the regulations violate their due-process rights by imposing a presumption of guilt on the disqualified person. The regulations do not create a presumption of guilt. They merely create a presumption that a person with a criminal record may not be fit to care for children. The disqualified person has the right to request a hearing before the commissioner of education at which he or she has the burden of proving by clear and convincing evidence that the disqualifying information would not "give reasonable cause to fear for the health and welfare of any child placed in his or her care." Sections 7.1.7 and 7.2.6.

■ The plaintiffs next argue that the regulations invade plaintiffs' rights to privacy by making the criminal records and fingerprints available to the commissioner of education. We disagree. Criminal records are public information and thus do not warrant privacy considerations. Several courts have held that fingerprinting employees does not invade privacy rights but is rather a minimal and reasonable intrusion. We agree. *See Iacobucci v. City of Newport, Ky.,* 785 F.2d 1354, 1357 (6th Cir.1986)("[w]hatever the outer limits of the right to privacy, clearly it cannot be extended to apply to a procedure the Supreme Court regards as only minimally intrusive"), *rev'd on other grounds,* 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986); *UWUA v. Nuclear Regulatory Comm'n,* 664 F.Supp. 136, 138–39 (S.D.N.Y.1987) ("[i]n non-criminal contexts, courts have regularly upheld fingerprinting of employees" where fingerprints are used only to identify and certify a prior criminal record); and *Thom v. New York Stock Exchange,* 306 F.Supp. 1002, 1007, 1009 (S.D.N.Y. 1969)("[t]he day is long past when fingerprinting carried with it a stigma or any implication of criminality" and "[t]he submission of one's fingerprints is no more an invasion of privacy than the submission of one's photograph or signature to a prospective employer").

■ The plaintiffs' final constitutional argument is that the regulations violate the search and seizure provisions of the Fourth Amendment. Again we disagree. The employment history, criminal-record check, and fingerprinting are not part of a criminal investigation. The regulations do not invade individual privacy rights. They merely require, as part of the licensing or employment process, certain background information to ensure the safety of the children to be cared for.

The crucial issue of this appeal, in our opinion, is whether the regulations are a valid exercise of delegated legislative authority that carries out the intent of the Legislature.

The plaintiffs argue that defendant commissioner exceeded the scope of authority delegated to him by the General Assembly in § 16–48.1–7 "to promulgate rules and regulations to carry out the intent of this chapter." The plaintiffs contend that chapter 48.1 covers only prospective operators and employees whereas the regulations cover present preschool operators and employees. The plaintiffs also contend that the legislation was meant to cover only employees whose work "involves supervisory or disciplinary power over a child or children or involves frequent and routine contact with a child or children without the presence of other employees," whereas the regulations cover, in addition to operators, "all other persons," including part-time employees and volunteers. In addition, plaintiffs argue that the regulations publicize criminal records whereas the provisions of chapter 48.1 of title 16 maintain the privacy of the records. The plaintiffs further contend that the regulations undermine the balance struck by the General Assembly between privacy rights and deterrence of child abuse by imposing criminal-record checks. By expanding the scope of the legislation, plaintiffs argue, defendants have exceeded the authority delegated by the General Assembly and acted beyond the Legislature's delegable authority.

We agree with defendants that the Legislature intended to include present operators and employees and that the commissioner has the authority to determine which positions should be subject to a criminal-record check since § 16–48.1–2 states, "The commissioner may by rule identify those positions requiring background checks and criminal record checks." Further, G.L. 1956 (1981 Reenactment) § 16–48–2, as amended by P.L.1985, ch. 334, § 4, gives the commissioner authority to require owners and employees of schools or programs to be fingerprinted, and § 16–48–3 gives the commissioner authority to make all necessary rules and regulations in conformity with the provisions of chapter 48 of title 16.

In their brief, plaintiffs argue that the commissioner's authority to promulgate these regulations is limited to chapter 48.1 of title 16. In *Brennan v. Kirby*, 529 A.2d at 637 we stated that "it is this court's responsibility in interpreting a legislative enactment to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes; * * * in performing this function the court must attempt to ascertain the intent by considering the enactment in its entirety and by viewing it in light of circumstances and purposes that motivated its passage." Section 16–48.1–2 specifically refers to § 16–48–1 to define the types of facilities covered by chapter 48.1 of title 16. Further, chapter 48 of title 16 is entitled "Educational Services to Very Young Children" while chapter 48.1 is entitled "Certification of Personnel Providing Educational Services to Very Young Children." We believe that, given the similar purposes and intent of the two chapters, both chapters grant power to the commissioner to promulgate rules regarding educational services to very young children. We find that the commissioner garners his rule-making authority from both chapters.

In *Lerner v. Gill*, 463 A.2d 1352, 1358 (R.I.1983), this court set forth its standard for identifying legislative and interpretive rules.

"To determine whether a rule is to be classified as legislative or interpretive, one must consider the power assigned to the administrative agency. If a statute expressly delegates power to interpret and define certain legislation to an agency, regulations promulgated pursuant to that power are legislative rules having the force of law. * * * If the lawmaking branch has not conferred such authority upon the agency promulgating the rule, the promulgation is interpretive and is not to be considered controlling by the courts."

■ Here the General Assembly expressly delegated rule-making authority to the commissioner to identify positions requiring background checks and criminal-record checks, *see* § 16–48.1–2, and to promulgate rules and regulations to carry out the intent of the chapter, *see* § 16–48.1–7. Thus the regulations may be classified as legislative rules that, if valid, are as binding on a court as a valid statute. *Lerner*, 463 A.2d at 1358. A legislative rule is valid if it is within the power granted by the Legislature, issued pursuant to proper procedure, and reasonable as a matter of due process. *Id.*

■ We find that the regulations are safely within the power granted by the Legislature. Section 16–48.1–2 states:

"Qualification.—Notwithstanding any other provisions of law to the contrary, any person seeking to operate or seeking employment in any facility covered under § 16–48–1, if such employment involves supervisory or disciplinary power over a child or children or involves frequent and routine contact with a child or children without the presence of other employees, shall undergo an employment background check and criminal records check as provided for in this chapter. The commissioner may by rule identify those positions requiring background checks and criminal record checks."

The regulations require employment-background checks and criminal-record checks including fingerprinting for the owners and operators of pre-school programs and all other persons including full-time or part-time employees such as teachers, aides,

secretaries, food handlers, bus drivers, volunteers and student teachers. The regulations specifically exclude those "who are present solely for observational purposes and not child task-oriented purposes." The intent of the Legislature in promulgating chapter 48.1 of title 16 was to scrutinize closely all persons who may have "supervisory or disciplinary power over" children or who may have "frequent and routine contact" with children "without the presence of other employees." We believe the regulations follow this directive. Although the statute applies to those who are "seeking to operate or seeking employment" and not to present employees, the Legislature specifically limited licensure of school programs to one year "which approval shall require renewal unless sooner revoked by said commissioner for cause." Section 16-48-2. Since the commissioner can renew or revoke his approval of these programs "for cause," he clearly has the authority to subject present employees and operators to the regulations.

The regulations were issued following proper procedure. A public hearing regarding the proposed regulations was held on February 25, 1986.

Finally the regulations are reasonable as a matter of due process. The commissioner, pursuant to specific authority delegated under §§ 16-48.1-4 and 16-48.1-5, defined "disqualifying information" as a record of conviction of any felony or any misdemeanor other than a stationary traffic offense. *See* Regulation 7.3. The existence of disqualifying information is grounds for denial of approval and, in the case of an employee, of employment. A person who is the subject of disqualifying information shall be informed and shall have the right to a hearing before the commissioner, or his designee, in accordance with G.L.1956 (1981 Reenactment) §§ 16-39-1 and 16-39-2. The person must prove by clear and convincing evidence that the offense for which he or she has been convicted does not give reasonable cause to fear for the health, safety, and welfare of any child placed in his or her care.

If disqualifying information is received, a letter is sent to that person informing him or her that an informal preliminary hearing will be held, if requested, to determine whether the offense is so minor that a formal hearing will not be needed. Although the applicant bears the burden of proof, it is not a violation of due process since the applicant is given a full opportunity for explanation.

Having determined that the regulations are valid legislative rules, we find the plaintiffs' supporting case law distinguishable. In *Little v. Conflict of Interest Comm'n,* 121 R.I. 232, 236, 397 A.2d 884, 886 (1979), this court stated, "An agency cannot modify the statutory provision under which it acquired power, unless such an intent is clearly expressed in the statute." Here the commissioner is not modifying statutory provisions but rather promulgating rules pursuant to specifically delegated authority. In *Statewide Multiple Listing Service, Inc. v. Norberg,* 120 R.I. 937, 941, 392 A.2d 371, 373 (1978) (citing *Petrarca v. Tax Administrator,* 113 R.I. 449, 322 A.2d 621 (1974)), this court limited an agency's authority to alter or to amend the scope of a statute via interpretive regulations, not legislative regulations. Again, in the instant case, the commissioner is not altering or amending the scope of the statute. Similarly the language plaintiff quotes in *Brier Mfg. Co. v. Norberg,* 119 R.I. 317, 323, 377 A.2d 345, 349 (1977), is distinguishable as it applies to regulations that are "plainly inconsistent" with the enabling statute. As stated above, these regulations are not inconsistent with chapter 48.1 of title 16. We conclude, therefore, that these regulations are valid legislative rules within the standard set forth in *Lerner* and are binding upon the courts of this state.

For the above reasons the plaintiffs' appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.