DECISION
Before this Court is a request for declaratory relief by Parkway Towers Associates and Diakonia Associates Limited Partnership (hereinafter "Plaintiffs"). Plaintiffs petition this Court to declare the Prepayment Regulations promulgated by the Rhode Island Housing and Mortgage Finance Corporation (hereinafter "RIHMFC") invalid. Plaintiffs further seek the right to prepay the mortgage loans made to them by RIHMFC. Jurisdiction is pursuant to R.I.G.L. 1956 (1985 Reenactment) § 9-30-1 etseq.
Facts
The parties have stipulated to the following facts. In June, 1977, Parkway and Diakonia received Three Million One Hundred Twelve Thousand Dollars ($3,122,000.00) and Three Million Thirty Thousand Dollars ($3,030,000.00), respectively, from RIHMFC as evidenced by the mortgage notes. The funding provided for the acquisition, construction, rehabilitation, development and/or permanent financing of multi-family housing developments. Plaintiffs granted RIHMFC a first mortgage on their developments. RIHMFC financed approximately ninety percent (90%) of the total cost of each development and the interest rate on the twenty-five (25) year mortgages was set at 6.8%.
As part of the financing, Plaintiffs executed Regulatory Agreements with RIHMFC. These Regulatory Agreements remain in force and effect so long as the mortgages are outstanding. Said agreements impose limitations on the rents, management and tenant eligibility at the developments.
Also, Parkway and Diakonia entered into Housing Assistance Payment Contracts (hereinafter "HAP Contracts") with RIHMFC on July 17, 1978 and June 19, 1978, respectively. Pursuant to Section 8 of the United States Housing Act of 1987, the U.S. Department of Housing and Urban Development forwards rental subsidies to RIHMFC and, in turn, RIHMFC provides rental assistance payments to Plaintiffs in return for their agreement to maintain decent, safe and sanitary housing at their developments. The Housing Assistance Payments provided to Plaintiffs equal the difference between the contract rents set by the HAP Contracts and the rent payable by lower income tenants. Lower income tenants pay a portion of rent equal to a set percentage of their income. The HAP Contracts had initial five (5) year terms and allow for four (4) additional five (5) year terms.
In July, 1993, RIHMFC promulgated "Regulations Governing Proposed Prepayments of Transfers ("Prepayment Regulations"). These Prepayment Regulations delineate the criteria applied by RIHMFC to ensure that there will be no material escalation of rents after prepayment. Pursuant to their mortgages, Plaintiffs became eligible in 1993 to seek prepayment of their mortgages. After being informed by RIHMFC that they must receive approval to prepay their loans, Plaintiffs filed these declaratory judgment petitions.
Pursuant to the Uniform Declaratory Judgment Act, this Court has the power to construe for any interested person a question of construction arising under a contract or statute. G.L. §§ 9-30-1,9-30-2. Accordingly, Plaintiffs request this Court to interpret RIHMFC's authority to promulgate rules and regulations governing the conditions under which an owner of a low income housing development may prepay a RIHMFC mortgage. Specifically, Plaintiffs ask the Court in its declaration to invalidate RIHMFC's Prepayment Regulations as regulations that are beyond the scope of RIHMFC's legislative authority.
Some statutory background is relevant to this case. In 1973, the Rhode Island General Assembly created RIHMFC by enacting Chapter 42-55, the RIHMFC Enabling Act, in response to "a serious shortage of safe and sanitary residential housing and shelter in the state available to persons and families of low and moderate income and the elderly." § 42-55-2. It is RIHMFC's purpose to encourage private investment in the construction, operation and maintenance of residential housing affordable to persons and families of low and moderate income through public financing.Id.
The General Assembly vested RIHMFC with "all powers, authority, rights, privileges, and titles to enable it to accomplish [the aforementioned purpose]." § 42-55-4(a). In particular, the Enabling Act states that RIHMFC has the authority to make loans, § 42-55-6(a), and to publish rules and regulations respecting the granting of these loans. § 42-55-6(d). Furthermore, the Enabling Act provides that loans made by RIHMFC to private investors would be subject to certain terms and conditions. § 42-55-9. Pertinent to this case is § 42-55-9(3), the prepayment provision, which provides that private investors could prepay loans to maturity "provided that RIHMFC finds that prepayment of the loan will not result in the material escalation of rents charged to persons and families of low and moderate income occupying the housing development."
Prepayment Regulations
Effective on July 6, 1993, RIHMFC promulgated the Prepayment Regulations to ensure that prepayment of a mortgage loan by a developer would not result in a material escalation of rent. Specifically, the Prepayment Regulations delineate the criteria utilized by RIHMFC to ensure no material escalation of rents will result. The Prepayment Regulations state in pertinent part that
 The Application for a Prepayment will be evaluated on the basis of the following standards
 * * *
 (b) The financial condition of the Housing Development must be acceptable to [RIHMFC]. All mortgage arrearages, operating deficits or reserve delinquencies shall be brought up to date, and [RIHMFC must be satisfied] that rents will be maintained at a level appropriate . . . such that no material escalation of rents shall result form the prepayment. Section III(A) (2) (b).
The Prepayment Regulations further set forth procedures used to review a prepayment application. First, the owner of the development must submit to RIHMFC an outline of the structure of the proposed prepayment along with an inspection and cost analysis report describing the present physical condition of the development and all necessary repairs. Section IV(B) (1) (b) 
(c). The owner may then request a meeting with RIHMFC to discuss the above. Section IV(B) (1).
Within thirty (30) days after the meeting, the owner shall submit its prepayment application. Along with other information, the Regulations state that the application must include the following:
 A Prepayment Regulatory Agreement . . . satisfactory to [RIHMFC] which in part shall contain an agreement by the Owner that the Affordable Housing Restriction shall be maintained on the Housing Development for at least the balance of the original term of the Mortgage Loan and such other restrictions and provisions as deemed necessary or advisable by [RIHMFC] to insure that no material escalation in rents will occur for the Housing Development during the original term of the Mortgage Loan . . . Section IV(C) (1) (b) (7).
RIHMFC will then inspect the development within twenty (20) days after receipt of the application and shall complete its review within sixty (60) working days after receipt of the application. Section IV(C) (2).
RIHMFC may (1) deny the prepayment, (2) recommend prepayment to the Board of Commissioners, which shall constitute preliminary approval, or (3) preliminarily approve prepayment subject to certain conditions. Id. Finally, after RIHMFC's approval of the prepayment, the developer has thirty (30) days to close the transaction. Section IV(D) (1).
In the instant case, Plaintiffs contend that RIHMFC lacks authority to require plaintiffs to sign a Prepayment Regulatory Agreement, which would require them to maintain affordability restrictions for the balance of the mortgage term, as a condition of prepayment approval. Citing the Affordable Housing Preservation Act of 1988, R.I.G.L. 1956 (1989 Reenactment) §34-45-1 et. seq., (hereinafter "The 1988 Act"), Plaintiffs argue that the General Assembly by enacting the 1988 Act defined RIHMFC's authority to determine whether prepayment will, or will not, result in the material escalation of rent. Pursuant to the 1988 Act, Plaintiffs contend that the General Assembly defined RIHMFC's role with regard to the issue of prepayment, and thus any additional rules and regulations regarding the determination of the material escalation of rent, i.e. the Prepayment Regulations, are invalid.
Alternatively, RIHMFC relies on its broad legislative powers as conveyed by the Enabling Act for its authority to promulgate the Prepayment Regulations. RIHMFC contends that it acted well within its statutory authority in adopting the Prepayment Regulations. Since the Prepayment Regulations are legislative rules as opposed to interpretive rules, RIHMFC argues that said Regulations have the full force and effect of law to which a presumption of validity attaches. Henry v. Earhart,553 A.2d 124, 129 (R.I. 1989). This Court agrees.
When dealing with statutory interpretation, our Supreme Court has stated on several occasions that when determining questions of statutory construction the court has an obligation to ascertain the legislature's intent. Dart. Indus. Inc. v. Clark,657 A.2d 1062 (R.I. 1995); State v. Benoit, 650 A.2d 1230, 1232 (R.I. 1994); State v. Kane, 625 A.2d 1361, 1363 (R.I. 1993). The Court has the responsibility of effectuating the Legislature's intent by examining the statute in its entirety and giving words their plain and ordinary meaning. Whitehouse v.Rumford Ins. Co., 659 A.2d 506 (R.I. 1995); In re FalstaffBrewing Corp., 637 A.2d 1047, 1049 (R.I. 1994). When a statute has a plain, clear, and unambiguous meaning no interpretation is required. Whitehouse at 508; Krupa v. Murray, 557 A.2d 868, 869 (R.I. 1989). Moreover, the court will not ascribe to the legislature an intent that leads to an absurd or unreasonable result. Dart Indus. Inc. at 1064; State v. McDonald,602 A.2d 923, 926 (R.I. 1992).
In the case at bar, based on these principles, this Court finds that RIHMFC's Enabling Act and the 1988 Act are plain and unambiguous and that the 1988 Act in no way restricts RIHMFC's powers under its Enabling Act. The 1988 Act, upon which Plaintiffs rely, was enacted because of "a compelling need to preserve the affordability of . . . rental housing units to low and moderate income persons and families in Rhode Island in order to prevent displacement" because of the potential loss of "privately owned and federally assisted housing." § 34-45-2. It was the legislature's intent to "preserve the availability and affordability to low and moderate income persons and families of currently available federally insured and assisted housing in . . . Rhode Island." § 34-45-3. Specifically, the crux of the 1988 Act is to provide RIHMFC and tenants who reside in federally assisted or insured developments certain notice requirements and minimum protection upon prepayment. §§ 34-45-6, 34-45-11.
Clearly, the 1988 Act neither sets forth factors for RIHMFC's determination of how or when to grant a prepayment application by a mortgagor nor limits RIHMFC's regulatory authority under its Enabling Act to promulgate rules and regulations governing prepayment, such as the Prepayment Regulations at issue. Accordingly, Plaintiffs' argument that RIHMFC acted beyond its statutory authority by requiring Plaintiffs to sign a Prepayment Regulatory Agreement as a condition of prepayment approval is without merit.
In support of this finding, the Court notes that the Enabling Act is replete with sections granting RIHMFC broad powers to effectuate the purpose of the Act. Not only is RIHMFC vested with "all powers, authority, [and] rights . . ." to enable it to secure the maintenance of affordable housing, § 42-55-4(a), but RIHMFC was expressly granted the authority to publish rules and regulations respecting the granting of mortgage loans. §42-55-6(d). Furthermore, our Supreme Court has stated that the Enabling Act does not unlawfully delegate legislative power to RIHMFC. Opinion to the Governor, 112 R.I. 151, 158,308 A.2d 809, 812 (1973). "[RIHMFC's] powers and limitations are specifically delineated," Id. at 812, and as such, this Court finds the promulgation of the Prepayment Regulations a valid exercise of its statutory authority.
Additionally, in determining that the Prepayment Regulations are valid, this Court finds very persuasive the case of LowerMain Street Assoc. v. New Jersey Housing and Mortgage FinanceAgency, 553 A.2d 798 (N.J. 1989). In Lower Main Street,
the New Jersey Supreme Court was asked to review the New Jersey Housing and Mortgage Finance Agency's regulation governing loan prepayment, which stated that "[p]repayment of the mortgage loan made by the agency is prohibited without the prior written approval of the agency." Id. at 800. The New Jersey Supreme Court rejected the developers' argument and held that the agency had the authority to determine whether to permit prepayment.Id. at 802. The Court noted that, "[w]hat is clear from the mortgages and regulatory agreements signed by plaintiffs is that the agency was lending funds to carry out a public purpose: to provide financing to private industry for the construction of affordable . . . housing. Plaintiffs accepted the mortgage proceeds for that purpose and enjoy the benefits of low interest rates . . . In turn, plaintiffs agreed to regulatory control of the units by the agency." Id. at 801. The Court went on to state that the public purpose behind the financing evidenced the parties' intent that affordable housing would be provided until the maturity dates of the loan. Id.
Although the New Jersey Supreme Court invalidated the aforementioned regulatory provision, it did so because the provision failed "to provide either statutory or regulatory standards that would inform the public and guide the agency in discharging its authorized function." Id. The Prepayment Regulations at bar, however, set forth in detail the procedures and criteria applicable to a prepayment application submitted by Plaintiffs. Moreover, the reasoning employed by the Lower MainStreet Court is applicable to this case.
Plaintiffs have enjoyed the numerous benefits associated with a RIHMFC mortgage. The Court notes that RIHMFC funded approximately ninety percent (90%) of the cost of the developments with an amended maturity date of the mortgage notes to 2003. Further, Plaintiffs received a low interest rate of 6.8%. In return for these benefits, this Court finds that Plaintiffs agreed to be bound by the rules and regulations imposed by RIHMFC, which include the Prepayment Regulatory Agreement.
Plaintiffs next contend that pursuant to the 1988 Act and subsequent amendments to RIHMFC's Enabling Act, RIHMFC must provide additional consideration to Plaintiffs for it to require that they maintain use and affordability restrictions for the term of the mortgage loans. Specifically, Plaintiffs cite §42-55-9(9) (d) for the proposition that financial incentives must be afforded to them in order to bind them to the affordability restrictions.
Alternatively, RIHMFC contends that § 42-55-9 (9) (d) only grants financial incentives to developers who agree to keep the developments affordable for a minimum of twenty (20) years after (a) the date it could prepay its mortgage or elect not to renew a Section 8 assistance contract or (b) the maturity date of the mortgage note. Consequently, since Plaintiffs have not agreed to keep their developments affordable for the twenty (20) year time period, RIHMFC argues that Plaintiffs are not entitled to any additional consideration pursuant to § 42-55-9(9) (d). This Court agrees.
Section 42-55-9(9)(d) states in pertinent part that
 Notwithstanding the above, the Corporation shall allow existing project owners to withdraw a right of return on redefined equity provided the Corporation finds that the project is "stable and financially secure" . . . In addition, the following requirements must occur: [ix] the owner agrees to maintain the housing affordable to persons of low and moderate income for (a) a minimum of twenty (20) years from the date the owner could prepay a mortgage securing development, as that term is defined in § 34-45-4, or could elect not to renew a Section 8 assistance contract under § 34-45-5 or (b) twenty (20) years from the maturity date of a note evidencing an indebtedness to the corporation which is secured by the housing development.
This Court finds the meaning of the aforementioned statute to be plain, clear, and unambiguous. Plaintiffs would be entitled to receive a higher return on equity if they conform to the affordability restrictions proscribed by § 42-55-9(9) (d). Since Plaintiffs have failed to agree to these conditions, they are not entitled to additional consideration.
Finally, Plaintiffs contend that since the HAP Contracts prevent the material escalation of rents charged to their low income tenants after prepayment, this Court should reject RIHMFC's Prepayment Regulations. RIHMFC argues convincingly, however, that the HAP Contracts do not provide adequate safeguards to prevent the material escalation of rent upon prepayment.
Plaintiffs entered into their HAP Contracts in the late 1970's. The Contracts carried initial five (5) year terms and allow for four (4) additional five (5) year terms. §§ 1.1(b) and 1.4 of the HAP Contracts. Plaintiffs are in the fourth five (5) year term under the Contracts. The final five (5) year term would begin in 1998 if exercised.
Pursuant to § 1.8 of the HAP Contracts, Plaintiffs have agreed to maintain decent, safe and sanitary housing at their developments. If said conditions are either voluntarily or involuntarily not maintained, however, RIHMFC may be forced to terminate the Contract pursuant to § 2.8. This termination would then relieve Plaintiffs of their duties to maintain their developments in satisfactory repair and would render the affordability restrictions unenforceable.
Furthermore, § 1.4(a) of the HAP Contracts allows Plaintiffs to decline to renew the remaining five (5) year option upon sixty (60) days notice to RIHMFC. Therefore, Plaintiffs may voluntarily terminate their HAP Contracts and the affordability restrictions thereunder. Accordingly, Plaintiffs' HAP Contracts fail to adequately ensure against the material escalation of rent upon prepayment.
For all the foregoing reasons, this Court declares that Prepayment Regulations promulgated by RIHMFC are valid. Accordingly, Plaintiffs have the right to prepay their mortgage loans upon a finding by RIHMFC that prepayment will not result in the material escalation of rent.
Counsel shall prepare the appropriate order for entry.