[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
The plaintiffs, Autobody Recyclers Association of Rhode Island ("ARARI"), K R Auto Salvage, Inc., and Bill's Auto Parts, Inc. (collectively, "the plaintiffs") have petitioned this Court for a judgment declaring that certain regulations recently amended by the defendant, Marilyn Shannon McConaghy, as Director of the Department of Business Regulation, ("Department") are invalid. The Department opposes such a declaration. The parties have certified the record of pertinent administrative proceedings and filed memoranda of law with exhibits in support of their respective positions. Jurisdiction of this Court is pursuant to G.L. 1956 § 42-35-7.
 FACTS AND TRAVEL
On May 9, 2002, the Department sent Advanced Auto Recycling, Inc., Bill's Auto Parts, General Auto Recycling, and K R Auto Salvage copies of proposed amendments to Commercial Licensing Regulation 6 — Auto Wrecking and Salvage Yards ("CLR6"). The next day, May 10, 2002, the Department had a Notice of Proposed Amendment to Regulation and Notice of Public Hearing published in the Providence Journal. This notice alerted readers that the Department proposed to amend CLR6, and that a public hearing would be held at 10:00 a.m. on June 27, 2002, at the offices of the Department. Proposed amendments were available to the public at the Department's offices, by mail upon request, and on the Department's website. "Interested persons" were invited to submit their "views, data or arguments" regarding the proposals, including possible alternatives, as well as the economic impact of the proposed amendments on small businesses, and or cities and towns, either in writing or at the hearing.
A public hearing was duly held on June 27, 2002. In addition to members of the defendant Department, four members of the public were in attendance: Rene Ducotte of K R Salvage, the Vice President of ARARI; Paul D'Ademo of Bill's Auto Parts, the President of ARARI; Chris Petrole[1] of General Auto Recycling, the Secretary of ARARI; and Gerard Capozzi of Capozzi's Auto Sales and Salvage. Messrs. Ducotte, D'Ademo, Petrole, and Capozzi presented testimony at the hearing, objecting to two specific amendments and proposing an additional amendment.
On August 15, 2002, the Department filed the amended regulations along with the Statement of Reasons for Adoption with the Secretary of State's office. The plaintiffs filed suit on December 9, 2002, seeking a declaration that certain amended regulations are invalid. The plaintiffs are a nonprofit trade association and two corporations engaged in the business of salvaging and reselling used motor vehicle parts. Representatives of each were present at and participated in the June 27, 2002 public hearing.
The plaintiffs challenge CLR6 § 6(A) which, as amended, provides:
 "The Department may deny an application for a License or revoke, suspend, or deny renewal of a License for any of the reasons set forth in R.I. Gen. Laws § 42-14.2-9[2] and for the following:
 (1) Failing to respond within ten (10) days to provide information requested by the Department as a result of a formal or an informal complaint to the Department which alleges a violation(s) of either the Act or the Regulation.
 (2) Engaging in any conduct while engaged in the operation of an Auto Wrecking and Salvage Yard that demonstrates bad faith, dishonesty, untrustworthiness, or incompetence.
(3) Violating an order of the Department.
 (4) If an employee or manager or owner of an Applicant or Licensee has engaged in any the following [sic] activities so that the Applicant or Licensee is unfit to do business and/or it impacts the Applicant's or Licensee's financial status and/or it impacts the Applicant's or Licensee's business integrity:
 (a) said individual has been convicted of any criminal felony involving dishonesty, breach of trust, forgery, embezzlement, obtaining money under false pretenses, bribery, larceny, extortion, conspiracy to defraud, fraud, false dealing or any similar offense(s) or has had a License revoked or suspended or an application for a License denied or any other license issued by this State revoked or suspended or an application for such denied.
(5) Jeopardizing public health, safety, or welfare.
(6) Failing to supervise employees."
In addition, the plaintiffs challenge CLR6 §§ 8(B) and 8(D), which provide:
 "(B) Records for all motor vehicle parts purchased and disposed of in any way must be maintained and available on the premises for inspection purposes.
. . .
 (D) Licensees who operate mobile crushers shall not crush any vehicles or motor vehicle parts on any premises which are not licensed. In addition to the records required in Section 8(A), Licensees who crush or allow the crushing of vehicles or motor vehicle parts on Licensed premises must maintain as part of its records the date the vehicle or motor vehicle part was crushed, by whom the crushing was done, and what was done with the crushed metal."
 STANDARD OF REVIEW
When an agency promulgates regulations pursuant to specific authority granted by the General Assembly, "the regulations are legislative rules that carry the force and effect of law and enjoy a presumption of validity." Parkway Towers Assoc. v. Godfrey, 688 A.2d 1289, 1293 (R.I. 1997). "To determine whether a rule is to be classified as legislative or interpretive, one must consider the power assigned to the administrative agency. If a statute expressly delegates power to interpret and define certain legislation to an agency, regulations promulgated pursuant to that power are legislative rules having the force of law." Lerner v.Gill, 463 A.2d 1352, 1358 (R.I. 1983) (citing Batterton v. Francis,432 U.S. 416 (1977)). "Legislative rules are valid if they are within the power granted by the General Assembly, are issued pursuant to proper procedure, and are reasonable as a matter of due process." Id. at 1258;see also, Parkway Towers, 688 A.2d at 1293.
If the regulation is challenged on constitutional due process or equal protection grounds and does not involve a fundamental constitutional right or suspect class, the regulation must be rationally related to furthering a legitimate state interest in order to be upheld. Rhode IslandDepositors Economic Protection Corp., 659 A.2d 95, 100 (R.I. 1995); seealso, In re Advisory Opinion to the House of Representatives, 519 A.2d 578,583 (1987). Only if a regulation is "without any reasonable basis and . . . purely arbitrary" will it be found unconstitutional under this standard. Id.
 VALIDITY OF THE REGULATIONS
The plaintiffs have brought this action pursuant to § 42-35-7, which provides:
 "The validity or applicability of any rule may be determined in an action for declaratory judgment in the superior court of Providence County, when it is alleged that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The agency shall be made a party to the action. A declaratory judgment may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question."
Persons engaged in operating an auto wrecking or salvage yard are required to obtain an Automobile Wrecking and Salvage Yard license. See
§ 42-14.2-3. The plaintiff corporations allege that they are such licensees, and that the amendments to CLR6 §§ 6(A), 8(B), and 8(D) subject them to the threat of suspension, revocation, and denial of renewal licenses by the Department based on unlawful regulations, thus threatening to impair their legal rights or privileges.
In their complaint, the plaintiffs have alleged that the challenged sections are invalid because they were not within the authority granted by the General Assembly, and were amended by an improper procedure. The plaintiffs also claim that CLR6 §§ 6(A), 8(B), and 8(D) violate the plaintiffs' rights to procedural and substantive due process and equal protection of the laws as guaranteed by Article 1, section 2 of the Constitution of the State of Rhode Island and Providence Plantations and the Fourteenth Amendment of the Constitution of the United States. They further urge that CLR6 §§ 8(B) and 8(D) are arbitrary, capricious, unreasonable, "overly broad and economically burdensome," vague, inconsistent with federal law, lack regulatory purpose, and would produce an unreasonable and absurd result.
 The Amendments are Within the Department's Statutory Authority
The challenged regulations were promulgated by the Department pursuant to specific authority granted by the General Assembly, and are therefore legislative rules which are presumed to be valid. See § 42-14.2-2(a) (authorizing the Department to "establish rules and regulations as appropriate in the public interest"); Parkway Towers Assoc. v. Godfrey,688 A.2d 1289, 1293 (R.I. 1997). To prevail on their claims, the plaintiffs must rebut this presumption.
The plaintiffs first contend that the amendments to CLR6 § 6(A), governing the denial, revocation, and suspension of licenses are not within the authority granted by the General Assembly. Specifically, the plaintiffs complain of CLR6 §§ 6(A)(4) and 6(A)(6), both of which concern the licensee or applicant's duties as an employer. CLR6 § 6(A)(4) permits the Department to deny, revoke, suspend or deny renewal of a license to a licensee or applicant if it is unfit to do business or its financial status or business integrity is impacted because an employee, manager, or owner of the company has been convicted of certain enumerated crimes of dishonesty or has had a previous license revoked, suspended, or denied. CLR6 § 6(A)(6) permits the Department to deny, revoke, suspend or deny renewal of a license to a licensee or applicant for failure to supervise its employees.
The plaintiffs claim that these regulations exceed the General Assembly's grant of authority because the Department is limited to regulating applicants and licensees only, not the employees of the applicants and licensees. They rely on Little v. Conflict of InterestComm. of Rhode Island, 121 R.I. 232, 397 A.2d 884 (1979). There, our Supreme Court acknowledged that "[n]o state official by administrative action can affect the substantive rights of the parties as they have been set forth by an affirmative act of the general assembly." Id. at 887. Applying that rule, the court held that because a member of a "redevelopment agency" was not "an officer or member of state or municipal government," it was beyond the Conflict of Interest Commission's authority to require, by regulation, that member to submit a financial statement.[3] Id. at 239.
In the present case, the plaintiff argues that if the legislature had intended that auto wrecking licenses be denied, suspended, or revoked because of an agent's or employee's action, it would have specifically authorized the Department to regulate employees by statute. By attempting to regulate employees, the plaintiff contends, the Department is impermissibly varying their substantive rights and exceeding its statutory authority.
The defendant argues that the challenged rules do not affect any individuals' statutory rights. Moreover, the Department contends that by statute, it must inquire into any pertinent information regarding an applicant or licensee — including information about employees — in determining whether it is in the public interest that a particular entity be licensed. See §§ 42-14.2-4, 42-14.2-9. Finally, the Department argues, it is clear that the purpose and policy of the enabling act favors construing it to allow the Department to protect the public interest by regulating who may be licensed; to prohibit the Department from investigating applicants and licensees would render the licensing system irrelevant.
The plaintiffs' argument that these sections affect the substantive rights of the parties is without merit. The parties challenging the regulation are the heads of several auto wrecking companies and the officers of a trade association. These plaintiffs have no substantive, affirmative statutory rights to either fail to supervise their employees in the auto wrecking industry, or to be owned by, managed by, or staffed by, individuals whose activities render the entity unfit to practice business or compromise its business integrity. Their right to licensure under § 42-14.2-1 et seq. has not been varied by the challenged regulations; nor are the regulations inconsistent with or in excess of the agency's powers. Section 42-14.2-9 of the General Laws permits the Department to deny, suspend, revoke or deny renewal of a license upon "[p]roof of unfitness of the applicant to licensee to engage in this business." The challenged regulations do not go beyond this grant of power.
This Court finds that CLR6 § 6(A) is consistent both with the enabling statute, which requires that rules be appropriate to the public interest, and with § 42-14.2-9, which it clarifies. The challenged amendments do not regulate employees, as claimed by the plaintiffs, but give employers notice of what may constitute "unfitness." These regulations are entitled to a presumption of validity; the plaintiffs have failed to rebut the presumption. The Court concludes that the Department did not exceed its statutory authority in amending CLR6 § 6(A) as it did.
 The Amendments Were Made Pursuant to Proper Procedures
The plaintiffs next contend that the Department failed to follow procedural requirements of the Administrative Procedures Act ("APA") in amending its regulations, and that under § 42-35-3, governing the procedures for adopting rules, the regulations are not valid. Pursuant to the APA, no agency rule is valid "unless adopted in substantial compliance with [section 42-35-3]." Section 42-35-3(c).
The APA requires that prior to the adoption, amendment, or repeal of any rule, an agency must give at least twenty days' notice, stating the substance, subjects or issues involved, as well as the time, place, and manner in which interested persons may present their views. Section42-35-3(a)(1). Such notice may be published in newspaper of general circulation in the state, and copies of proposed rules must be made available at the agency and by mail upon request. Id. The agency must also allow all interested persons reasonable opportunity to present data, views, or arguments, orally or in writing. Section 42-35-3(a)(2). If twenty-five persons, a governmental subdivision or agency, or an association with at least twenty-five members request an oral hearing, the agency must hold one. Id. In addition, if an interested person requests, the agency must issue a "concise statement of the principal reasons for and against [a rule's] adoption," with reasons for overruling opponents arguments prior to or within thirty days of its adoption. Id.
The record is very clear, and the plaintiffs do not challenge, that the defendant has complied with these procedural requirements.
The agency must also determine whether such action would have a significant adverse economic impact on small business; if so, the notice of the proposed action must identify the types of businesses that would be affected and how, and request proposals on how to minimize or eliminate the adverse impact. Id. The plaintiffs argue that the Department did not comply with § 42-35-3(3) in that it failed to identify the types of small businesses that would be affected and the kind of adverse effect expected, and did not request comments on proposals on how to mitigate or eliminate the impact. The Department did, however, send Advanced Auto Recycling, Inc., Bill's Auto Parts, General Auto Recycling, and K R Auto Salvage copies of the proposed rules, effectively identifying the types of businesses that would be affected. Furthermore, the plaintiffs themselves note that the record contains a written memorandum from the ARARI indicating the adverse effects the plaintiffs expected from the defendant's proposed regulations. In addition, an audio recording of the June 27, 2002 hearing indicates that the plaintiffs submitted alternatives for the proposed amendments. Thus, the fact that the Department did not, in its published notice, identify the types of small businesses that would be affected or explicitly request alternate proposals is of little moment. This Court finds that the Department substantially complied with the requirements of § 42-35-3
Although there may have been some technical faults in the Department's notice, the plaintiffs have presented no evidence that they were prejudiced by them. "Notice is adequate if `it affords interested parties a reasonable opportunity to participate in the rulemaking process.'"Lloyd Noland Hospital Clinic v. Heckler, 762 F.2d 1561, 1565-66 (11th Cir. 1985) (applying the federal Administrative Procedures Act, and holding that where copies of a study were sent to three hospital organizations which represented 7,520 hospitals, the number and relative uniformity of responses, indicated that the actual notice was sufficient) (quoting Forester v. Consumer Product Safety Comm'n, 559 F.2d 774, 787
(D.C. Cir. 1977)); accord Common Carrier Conference v. United States,534 F.2d 981, 982-83 (D.C. Cir. 1976) (actual knowledge by most interested parties sufficient to cure notice defects), cert. denied,429 U.S. 921, (1976). The plaintiffs neither dispute that they had notice of the proposed rule changes and of the public hearing held on June 27, 2002, nor that they were given an adequate opportunity to present there views at the hearing. The Court, therefore, finding no substantial prejudice to the plaintiffs on account of alleged defects in notice, concludes that any defects were cured by fact that the plaintiffs had actual notice and an opportunity to participate.
As a second procedural objection, the plaintiffs argue that the Department did not comply with § R.I. Gen. Laws § 42-35-3(3), which requires that the Department
 "[d]emonstrate the need for the adoption, amendment, or repeal of any rule in the record of the rulemaking proceeding. The agency shall demonstrate that there is no alternative approach among the alternatives considered during the rulemaking proceeding which would be as effective and less burdensome to affected private persons as another regulation. This standard requires that an agency proposing to adopt any new regulation must identify any other state regulation which is overlapped or duplicated by the proposed regulation and justify any overlap or duplication."
The plaintiffs argue that the Department did not demonstrate the need for amending CLR6 § 6(A) and failed to demonstrate that there was no alternative that would be as effective and less burdensome.[4] The Department argues that it has demonstrated the need for the amendments; they are designed to "effectuate the regulation of the auto wrecking and salvage yards for the public interest."
According to the plaintiffs, the requirements of CLR6 § 6(A) impose economic burdens on affected businesses, although they have almost completely neglected to explain what those burdens are. The one notable exception to this neglect is in their opposition to CLR6 § 6(A)(4), which provides that the Department may deny, suspend or revoke a license because the applicant or licensee is unfit to engage in business due to certain employees. The plaintiffs argue that the regulation imposes a "large investigatory burden" on licensees because they will be required to determine whether employees have certain types of criminal convictions on their records, or have had a license suspended or revoked at some time. The plaintiffs further claim that this regulation would "drain the employee pool" of possible workers, and would have a "devastating impact" on the affected businesses because of the number of people who would be disqualified. The Department argues that it demonstrated the need for CLR6 6(A)(4) by explaining that its purpose is to prevent "straw" applicants or licensees from being used to allowing an individual who is not fit to run an auto recycling business. They argue that the Department should have adopted a less burdensome alternative, such as providing that the Department would conduct its own reviews to determine whether the alleged "straw" was indeed a mere figurehead.
The Court finds that the Department has demonstrated a legitimate need, and that the adverse effects claimed by the plaintiffs are completely unsubstantiated. Prior to the challenged amendments, CLR6 § 6(A) (formerly § 7) provided simply that "[t]he Board may revoke, suspend or cancel a license granted under R.I. Gen. Laws. § 42-14.2-1 et seq. for an Auto Wrecking Yard or an Auto Salvage Yard's violation of any section of the law and these rules and regulations." The amended CLR6 § 6(A) does not require licensees or applicants to affirmatively do anything. These amendments merely clarify and define possible grounds upon which the Department might find a company "unfit" under § 42-14.2-9 and make the decision to deny, revoke, suspend or deny the renewal of a license. For example, CLR6 § 6(A)(4) imposes no obligation on companies to run background checks on their employees; however, if they do employ individuals with a certain history, they must maintain their "fitness" to engage in business nonetheless. The plaintiffs have failed to show that the amendments to CLR6 § 6(A) will result in any adverse effect on their businesses.
Next, the plaintiffs claim that the Department failed to comply with §42-35-3(a)(3) in amending CLR6 § 8(D). They claim that the Department did not demonstrate a need for the regulation and that it is burdensome and will have a significant adverse economic impact, requiring a licensee operating a mobile crusher to "maintain records for vehicles and parts that have been pressed to 1/8 of their normal size or perhaps baled into a log." In its Statement of Reasons for Adoption, the Department explained that the amendment "clarifie[s] that the current requisite records kept by Licensees by said Regulation shall include details relating to the crushing of motor vehicles or motor vehicle parts." After reviewing a recording of the public hearing of June 27, 2002, it is apparent to the Court that the Department, recognizing that not all of those licensed under this scheme buy and sell vehicles and vehicle parts, but that some crush cars into scrap metal, closed what it saw as a deficiency in its record keeping requirements by mandating that those who operate mobile crushers keep records of the cars they crush as well. As noted at the hearing, if the cars they crushed were bought from other licensees under this section, the records would be duplicates, but the Department believed that the duplication did not cause any significant burden. The plaintiffs' main objection appears to be that they do not see the purpose behind keeping all of these records.
The Court finds that the Department demonstrated a need for the amendment by showing that it was necessary to close what it saw as a loophole in its records keeping requirements. Further, after reviewing the record, the Court finds that the Department rejected proposed alternatives, and determined that the most appropriate way for records to be kept was to require licensees to keep records. The Court concludes that CLR6 § 8(D) was enacted pursuant to proper procedure.
As a final procedural objection, the plaintiffs argue that because the Department did not list the proposed amendments to the CLR6 on its regulatory agenda, the rules are invalid. See § 42-35-5.1(a)(2). However, by statute, "nothing . . . precludes an agency from considering or acting upon any matter not included in the regulatory agenda." Section42-35-5.1(d). The plaintiff's argument is without merit.
 Equal Protection and Due Process
To be valid, administrative regulations must be "reasonable as a matter of due process." Parkway Towers Assoc., 688 A.2d at 1293. The plaintiffs have advanced the position that the proposed regulations violate their substantive and procedural due process rights, as well as their right to equal protection of the laws under the state and federal constitutions.[5]
"It is a well-settled principal of constitutional analysis that legislative enactments are presumed to be constitutional." Henry v.Earhart, 553 A.2d 124, 127 (R.I. 1989). This principle applies with equal force to validly enacted legislative rules (i.e., administrative regulations); "once the validity of such a [legislative] rule is established, it is as binding on a court as a valid statute." Id. n. 1 (citing Brennan v. Kirby, 529 A.2d 633 (R.I. 1987)).
The Rhode Island Constitution provides that "No person shall be deprived of life, liberty or property without due process of law, nor shall any person be denied equal protection of the laws." R.I. Const. art. I § 2. The "due process" and "equal protection" clauses of the state constitution were intended, by the drafters, to parallel the language of the Fourteenth Amendment to the United States Constitution. Jones v.Rhode Island, 724 F. Supp. 25 (D.R.I. 1989). Further, their adoption was intended to provide protections similar to the equal protection and due process guarantees of the Fourteenth Amendment to the United States Constitution. Kleczek v. Rhode Island Interscholastic League, Inc.,612 A.2d 734, 740 (R.I. 1992). A determination of the merits of the plaintiffs' federal and state constitutional claims thus requires application of identical standards. The Court will first address the plaintiffs' contention that the new regulations violate their substantive due process rights because they are arbitrary, unreasonable, and exceed what is necessary for public's protection.
The due process clause protects individuals' property interests and liberty interests from arbitrary government interference. In re AdvisoryOpinion to the House of Representatives, 85-H-7748, 519 A.2d 578, 581
(R.I. 1987). The former include interests created by statute entitling citizens to certain intangibles such as welfare benefits or employment; the latter includes not only freedom from restraint, but also the freedom to contract, to engage in an occupation, and generally, to pursue happiness. Id. Our Supreme Court has held that there is no protected property interest in obtaining a license to do a particular type of business in this state. See id. (finding that denying health care facility licenses to publicly traded companies did not effect any deprivation of property). Although a liberty interest is involved here, this Court concludes that there is no fundamental right to a license to engage in auto wrecking and salvage. See id. at 582-83 (fundamental rights include right to vote, right to travel); see also, Allard v. Dep'tof Transp., 609 A.2 930, 937-38 (R.I. 1992) (no fundamental right to operate a motor vehicle). When no fundamental right is involved, the opponent of the enactment bears the burden of showing that there is no rational connection between the enacted regulation and the legitimate legislative aim. In re Advisory Opinion, 519 A.2d at 582 (citing Kelleyv. Johnson, 425 U.S. 238, 247 (1976)).
The defendant has identified several interests it seeks to further by making the challenged amendments. The Department argues that the legitimate end it is pursuing is to ensure that licensed auto wrecking businesses are being operated properly and safely, and are fit to do business, in order to protect the public interest. A more specific interest the Department seeks to advance by amending the challenged regulations is the prevention of auto wrecking licenses being issued to "straw" businesses, which might allow an individual whose application for a license had previously been denied or revoked, or who is otherwise unfit, to continue operating one of these businesses.
The Court finds that the Department's stated interests in promulgating the challenged regulations are legitimate as they related to public health, safety, morals, or general welfare, and are thus solidly within the state police power. Id. The plaintiffs have not carried their burden of proving that the regulations bear no rational relationship to these legitimate ends. Their argument on this point is simply a few conclusory statements claiming that the regulations go further than necessary and will not achieve their intended purpose. The United States Supreme Court and our Supreme Court have, for quite some time now, eschewed "weigh[ing] the wisdom of state and social economic legislation," choosing instead to allow the legislatures substantial latitude to determine what best promotes the interests of their constituents. See In re Advisory Opinion,519 A.2d at 581. Whether the measures are wise, whether they are efficient, efficacious, or completely useless is not for this Court to decide. As the plaintiffs have cited no authority to support their position, they have not carried their burden of establishing that the regulations have no rational basis.
In addition to their substantive due process challenge, the plaintiffs have raised a procedural due process issue, claiming that certain of the regulations are unconstitutionally vague on their face. When a plaintiff charges that a statute or regulation is unconstitutionally vague on its face, the plaintiff must show that the law is "invalid in toto — and therefore incapable of any valid application." Village of Hoffman Estateset al. v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 n. 5 (1982) (quoting Stefel v. Thompson, 415 U.S. 452, 474 (1974)). The "degree of vagueness" that is tolerated under constitutional standards varies with the type of regulation under analysis. Id. at 498. An economic regulation may be drawn less precisely than one affectingfirst amendment freedoms. Id. This is because businesses may be expected to plan more carefully to conform their actions to the law than individuals, and may also have access to an administrative process to clarify its meaning. Id. at 498-99. Further, regulations with civil penalties do not require the same degree of precision in drafting as enactments with criminal penalties because the latter are qualitatively more severe. Id.
In determining the facial validity of a statute or regulation, the Court must consider limiting constructions proffered by its proponent, in this case the Department. Id. at n. 5.
The plaintiffs have argued that CLR6 §§ 6(A)(2) and 6(A)(5) are unconstitutionally vague. CLR6 § 6(A)(2) is invalid, they contend, in that it requires licensees to follow the "vague and illusory standard of `be honest and follow statutory and regulatory requirements.'" CLR6 § 6(A)(5) provides that the Department may deny, suspend, revoke or deny renewal of a license if the licensee or applicant is "[j]eopardizing public health, safety, or welfare." The plaintiffs claim that this section is so vague that licensees and applicants have no notice of what would constitute a violation, and that it gives the Department too much discretion to interpret "public health, safety, or welfare."
A regulation is unconstitutionally vague when if forces "a person of average intelligence to guess and to resort to conjecture as to its meaning and/or as to its supposedly mandated application." Trembley v.City of Central Falls, 480 A.2d 1359, 1365 (R.I. 1984) (upholding an ordinance where its terms were not ambiguous); compare State v. Berker,114 R.I. 72, 73 (R.I. 1974) (holding that a criminal statute penalizing anyone "behaving in a disorderly or indecent manner in the city or who shall aid, incite or encourage the same to be done" failed to give a person of ordinary intelligence fair notice that his contemplated conduct was forbidden by the ordinance and . . . encouraged arbitrary and erratic arrests and convictions.") The Court is mindful, however, that because the regulations challenged in this case do not touch upon any fundamental constitutional right, because they regulate businesses, not individuals, and because they carry civil, not criminal penalties, the constitution will tolerate a certain degree of imprecision. Moreover, licenses cannot be suspended or revoked or any application denied except after a hearing, which reduces the danger of unfettered discretion in the interpretation of the regulation. See Section 42-14.2-10.
The Court must also consider that the Department has proffered certain limiting applications of the regulations. For example, in its Statement of Reasons, the Department explains that CLR6 § 6(A)(5), regarding "failure to supervise employees," contains an implicit standard of reasonableness, and may be read consistently with provisions in other statutory schemes governing Departmental licensees. In light of the aforementioned considerations, this Court finds that there are possible valid applications of these regulations. The plaintiffs have not carried their burden of showing that the regulations are invalid in toto; their claim that they are unconstitutionally vague on their face is denied.
The plaintiffs' equal protection challenge is similarly without merit. They claim that CLR6 §§ 6(A) and 8(D) classify autowrecking and salvage companies separately from other industries and impose significant burdens that other industries do not have to bear. The plaintiffs argue that the Department "cannot show that auto recyclers should be held to a higher standard with respect to employees than those in [other] fields."
The Court first notes that "a fundamental principle of equal protection analysis is that not all legislative classifications are impermissible.Trembley, 480 A.2d at 1365 (quoting Boucher v. Sayeed, 459 A.2d 87, 91
(R.I. 1983)). "Where it has not been shown that a `fundamental right' has been affected or that the legislation sets up a `suspect classification,' a statute will be invalidated on equal protection grounds only if the classification established bears no reasonable relationship to the public health, safety, or welfare." Id.
As noted above, this Court has concluded that the right to obtain a license to operate an auto wrecking and salvage business from the state is not a fundamental liberty interest under the constitution. See In reAdvisory Opinion, 519 A.2d at 581. Further, it is quite clear that "auto recyclers" are not "members of a `discrete and insular minority' entitling them to classification as a suspect group." Cf. Trembley,480 A.2d at 1366 (citing Regents of the University of California v.Bakke, 438 U.S. 265 (1978) (recognizing, for example, race as a suspect class)). The plaintiffs, then, have the burden of proving that the regulations have no rational relationship to the Department's legitimate goals.
The plaintiffs argue that it is irrational to classify auto recyclers separately from other industries and impose different (and according to them, stricter) requirements. The defendants, as discussed above, have come forward with numerous legitimate state aims, well within the ambit of the traditional police power. The Court finds that the plaintiffs have not carried their burden, and that it is rational to promulgate regulations specific to particular industries. The Court further finds that regulations requiring detailed record keeping, supervision of employees, and other reasonable precautions are rationally related to the Department's aim of protecting consumers from fraud and illegality at the hands of a licensee.
 CONCLUSION
The Court finds that the amendments to Commercial Licensing Regulation 6 — Auto Wrecking and Salvage Yards are within the Department of Business Regulation's authority, were issued pursuant to proper procedure, and are constitutional under the state and federal constitutions. The plaintiffs' request for a judgment declaring the amendments invalid is denied. The parties are directed to submit an appropriate order for entry.
[1] The proper spelling of this individual's name was difficult to discern from the record; the Court regrets if there is a mistake.
[2] § 42-14.2-9. Denial or revoking of licenses
The department may deny an application for a license, or suspend or revoke a license after it has been granted, or refuse to renew a license for any of the following reasons:
(A) Proof of unfitness of the applicant or licensee to engage in this business.
(B) A material misstatement by the applicant or licensee in his application for a license or renewal thereof.
(C) Wilful failure of the applicant or licensee to comply with the provisions of this chapter or with any rule or regulation promulgated by the board.
(D) Proof that the applicant or licensee has wilfully defrauded the owner of a motor vehicle.
[3] The Little court also held that the statute authorizing the collection of financial statements was penal in nature, and so had to construe it narrowly; this, it said, was an equally important reason for reversing the Conflict of Interest Commission. Little v. Conflict ofInterest Commission of Rhode Island, 121 R.I. 232, 240-41, 397 A.2d 884,888 (1979).
[4] The plaintiffs address each subsection of CLR6 6(A) separately, but as the arguments are essentially the same, the Court addresses them inglobo.
[5] Corporations, such as the plaintiffs, are considered "persons" within the meaning of the due process and equal protection clauses. In reAdvisory Opinion to the House of Representatives Bill 85-H-7748,519 A.2d 578, 581 (R.I. 1987).