DECISION
Plaintiff Stephen Trombley ("Plaintiff") appeals the January 9, 2001 decision of the City of Warwick Board of Public Safety ("Board"), denying Plaintiff's petition for a service-related disability pension. Jurisdiction is pursuant to G.L. 1956 § 42-35-15 and P.L. 1993 ch. 362.
 FACTS AND TRAVEL
Plaintiff began work as a police officer for the City of Warwick on July 1, 1981. On March 6, 1998, Plaintiff ceased working after experiencing chest pains, for which he was treated at Rhode Island Hospital. Plaintiff did not suffer a heart attack, but the Police Department placed him on "on-the-job-injured" ("OJI") status, due to work-related stress (Board Hr'g on September 14, 1999 (Hr'g 1) at 4). Plaintiff received his full pay and medical expenses while he was on OJI status. Id. Plaintiff had previously stopped working temporarily because of stress in 1991 and 1996 (Board Decision of October 12, 1999 (Decision 1) at 6).
On October 12, 1999, the Board denied Plaintiff's request for a service-related disability pension. Id. The Board based its decision on the reports of three independent examining doctors: Dr. Cullen, Dr. Franek, and Dr. Harrop (Decision 1 at 4). These doctors each examined Plaintiff in accordance with Warwick City Ordinance Art. III, Sec. 52-76. Each doctor reported that Plaintiff was disabled, but not permanently disabled. Id. The reports of each doctor varied on the cause of the Plaintiff's disability. Dr. Cullen stated that his disability was work-related, but mostly due to conflicts with police administration (Cullen Medical R. at 10). Dr. Franek's opinion was that Plaintiff's disability was "definitely causally related" to work (Franek December 8, 1998, Medical R. at 7). Dr. Harrop stated that the disability was not work-related (Harrop March 5, 1998, Medical R. at 4).
Subsequent to the Board's October 12, 1999 decision, updated medical records from Plaintiff's treating psychiatrist were forwarded to the three independent examining doctors (Board Decision on January 9, 2001 (Decision 2) at 1). Dr. Cullen made no comment on the new records.Id. Dr. Harrop, who only reviewed the new records, reported that the Plaintiff was permanently disabled, but that the disability was not service-related (Harrop August 23, 2000, Medical R at 2). Dr. Franek, who both reviewed the new records and re-evaluated Plaintiff, reported that the Plaintiff was permanently disabled and that his disability was service-related (Franek September 18, 2000, Medical R. at 3). In accordance with the City of Warwick Board of Public Safety Rules and Regulations Regarding Disability Pensions ("Rules and Regulations"), these reports were reviewed by the Board's medical panel, consisting of three licensed medical physicians, and its medical consultant, who is also a licensed medical physician (Decision 2 at 1). Both the medical panel and medical consultant agreed with Dr. Harrop's determination that the permanent disability was not service-related and recommended such a finding to the Board. Id.
Plaintiff's medical records described several work-related events that purportedly contributed to his disability. A thirteen-year-old girl, whom he was monitoring for molestation, committed suicide (Franek December 8, 1998, Medical R. at 2). Several other youths that he worked with as a community police officer were victims of molestation or committed suicide. Id. He also reported to the scene of an incident involving a youth who accidentally shot his friend in the stomach.Id. at 3. In addition to the events described in his medical records, Plaintiff also described to the Board at his second hearing, on October 24, 2000, that he was traumatized by viewing the mangled body of a car accident victim (Decision 2 at 4).[1]
The Board issued a second decision on January 9, 2001. In this decision, the Board used the standards for evaluating disabilities set forth in the Board's Rules and Regulations (Decision 2 at 3). The Board stated that it had reviewed the reports of the independent examining doctors, the medical panel, the medical consultant, all the evidence and reports that contributed to its October 12, 1999 decision and testimony from the Plaintiff. Id. at 1. The Board found that Plaintiff was permanently disabled and could not return to police work. Id. at 5. The Board also concluded, however, that Plaintiff's disability was not service-related. Id. Therefore, the Board granted Plaintiff a non-service-related disability pension. Id.
Plaintiff now seeks to reverse the decision of the Board, arguing that the Board's application of its own Rules and Regulations was in contravention of applicable statutory provisions and was affected by error of law. Plaintiff also contends that the Board's determination that the disability was not service-related was clearly erroneous in light of substantial evidence on the record and was arbitrary and capricious. It is on these grounds that Plaintiff now timely appeals the Board's decision to this Court.
 STANDARD OF REVIEW
This Court's review of a decision of the Warwick Board of Public Safety is controlled by G.L. 1956 § 42-35-15 of the Administrative Procedures Act ("APA"). See P.L. 1993, ch. 362. Subsection (g) of section 41-35-15 provides as follows:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The Court may affirm the decision of the agency or remand the case for further proceedings, or it may revise or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a decision of an agency under the APA, the Court is limited to an examination of the certified record to determine whether the agency's decision is supported by legally competent evidence.R.I. Pub. Telecomm. Auth. v. Rhode Island State of Labor RelationsBd., 650 A.2d 479, 485 (R.I. 1994); Cahoone v. Bd. of Review of theDept. of Employment Security, 104 R.I. 503, 506, 246 A.2d 213, 214
(1968). Legally competent evidence is defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." R.I. Temps v. Dept. of Labor and Training,749 A.2d 1121, 1125 (R.I. 2000) (quoting Newport Shipyard Inc. v. Rhode IslandComm. for Human Rights, 484 A.2d 893, 897 (R.I. 1984)). This limitation applies even when the Court might be inclined to view evidence differently or to draw different inferences than those of the agency.R.I. Pub. Telecomm., 650 A.2d at 485; Barrington School Comm. v.R.I. State of Labor Relations Bd., 608 A.2d 1126, 1138 (R.I. 1992). An agency's decision on a question of law is not binding on this Court, however, and may be reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflict of InterestComm., 509 A.2d 453, 458 (R.I. 1986) (citing Narragansett Wire Co. v.Norberg, 118 R.I. 596, 607, 376 A.2d 1, 6 (1977)).
 ISSUES PRESENTED
Plaintiff contends that the Rules and Regulations used by the Board conflict with G.L. 1956 §§ 45-19-1 and 45-19-19, which set forth requirements for state and municipal disability pension plans. Section45-19-1, in pertinent part, reads as follows:
 "(a) Whenever any police officer . . . of any city, town, fire district, or the state of Rhode Island is wholly or partially incapacitated by reason of injuries received or sickness contracted in the performance of his or her duties, the respective city, town, or fire district, or state of Rhode Island by which the police officer is employed . . . shall, during the period of the incapacity, pay the police officer . . . the salary or wage and benefits to which the police officer . . . would be entitled had he or she not been incapacitated . . ."
Section 45-19-19, reads as follows:
 "The city or town councils of the various cities and towns may provide, by ordinance or through collective bargaining, for the retirement of the personnel of their police and fire departments who have been on leave of absence from their employment due to sickness contracted or injuries sustained in performance of their duties; provided that no ordinance is contrary to any pension cost of living increase or escalator clause in a collective bargaining agreement, and provided further, that no ordinance for a disability retirement allowance of less than sixty-six and two-thirds percent (66 2/3%) of a retiree's annual salary at the time of retirement nor more than one hundred percent (100%) of a retiree's annual salary."
Plaintiff argues that Warwick's authority to create a pension plan is derived from section 45-19-19. Specifically, it is Plaintiff's contention that neither this statute, nor Warwick city ordinance, authorize the Board to make its own regulations regarding the evaluation and determination of disabilities. Therefore, Plaintiff maintains that the Board should have evaluated his disability under section 45-19-1.
Defendant argues that the Board's Rules and Regulations were validly promulgated pursuant to special enabling legislation of the Rhode Island General Assembly enacted prior to or not withstanding the passage of G.L. 1956 §§ 45-19-1 to 45-49-49. This special legislation, Defendant asserts, authorizes the City of Warwick to create and regulate its own pension system for police personnel. Defendant urges that this special legislation trumps sections 45-19-1 and 45-19-19, which are general in nature.
 STATUTORY AUTHORITY OF THE BOARD
Between 1911 and 1960 various pieces of special enabling legislation authorized the City of Warwick to create its own governing board for the management and compensation of police officers both active and retired. Specifically, in 1911 the General Assembly created by special act, the Board of Police Commissioners ("Commissioners") for the town of Warwick.See P.L. 1911, ch. 695. This special act explicitly authorized the Commissioners to make rules and regulations for the management and payment of the police force. See P.L. 1911, ch. 695, §§ 7, 11, 17.
Expanding Warwick's control over its police force, the General Assembly authorized the City of Warwick to establish a pension fund for its police personnel by a special act adopted in 1943. See P.L. 1943, ch. 1297; see also Morry v. City of Warwick, 742 A.2d 1205, 1206 (R.I. 2000). This special act also authorized the Commissioners to place police officers on the pension list if they were unfit for duty because of physical or mental infirmities. Id. A 1956 amendment allowed the Warwick Commissioners to place police officers, who served more than twenty-five years, or who were over fifty-five years of age, on the pension list, at its discretion. See P.L. 1956, ch. 3627, § 2. Consistent with P.L. 1943, ch. 1297, a Warwick ordinance also vested the Board with the authority to place police officers on the pension list if they became unfit for duty due to mental or physical infirmity.See Warwick, R.I., Code of Ordinances, Art. III, § 52-76.[2] In 1960, the General Assembly created the City of Warwick Board of Public Safety and imbued it with all the powers and authority previously vested in the Board of Police Commissioners for the town of Warwick. See P.L. 1960, ch. 150, §§ 8 to 6.
The law in Rhode Island regarding conflicting general and special legislation is governed by G.L. 1956 § 43-3-26 and is well-settled. Section 43-3-26 mandates that whenever a general and special provision related to the same subject conflict, they "shall be construed, if possible, so that effect may be given to both; and in those cases, if effect cannot be given to both, the special provision shall prevail and shall be construed as an exception to the general provision."Id. Our Supreme Court has applied section 43-3-26 to uphold the validity of special acts applicable to a municipality over a general act applicable to the entire state. See Landers v. Reynolds, 92 R.I. 403,406, 169 A.2d 367, 368 (1961) (a special act creating an employee's retirement fund in Providence was not repealed by a general law regarding pensions for police in all municipalities). This rule was applied in several cases to exempt local pension funds, authorized by special enabling acts, from the requirements of section 45-19-1.See St. Germain v. City of Pawtucket, 119 R.I. 638, 641, 382 A.2d 180,181 (1978); Santanelli v. City of Providence, 105 R.I. 208, 212,250 A.2d 849, 851 (1969); Central Falls Firefighters, Local No. 1485 v. Cityof Central Falls, 465 A.2d 770, 775 (R.I. 1983); Trembley v. City ofCentral Falls, 480 A.2d 1359, 1362 (R.I. 1984).
Notably, in St. Germain, our Supreme Court explained that section45-19-1 was intended to provide for police and firefighters only in towns that did not already have their own pension plans. St.Germain, 382 A.2d at 641. Our Supreme Court further noted that section45-19-1 was not intended to supersede the provisions of local plans in any way. Id. Moreover, when a validly enacted local pension plan exists, an individual covered by that plan may not seek benefits under a general law, even if that general law offers benefits not covered by the local plan. Santanelli, 105 R.I. at 213, 250 A.2d at 852.
In addition, our Supreme Court has specifically held that Warwick's pension plan is not superseded by section 45-19-19. See Morry v. City ofWarwick, 742 A.2d 1205, 1207 (R.I. 2000). The Court in Morry explained that once Warwick provided a comprehensive retirement plan for employees pursuant to a special act of the General Assembly, the plan is not superseded by general statutes applicable to the same subject matter.Id. at 1207; see also Santanelli, 105 R.I. at 213, 250 A.2d at 852
(similar pension plan in the City of Cranston not affected by the enactment of section 45-19-19).
The pension fund established for police officers in Warwick was authorized by special enabling legislation and is thus not in conflict with sections 45-19-1 or 45-19-19, which are general statutes. It is also clear from the special enabling acts that the legislature intended for Warwick to create its own pension plan and that it did not intend for section 45-19-1 to supersede that plan. Accordingly, the decision of the Board was not in violation of statutory provisions.
 THE BOARD'S DECISION
Plaintiff additionally contends that the Board's decision was against the weight of the evidence. Specifically, Plaintiff maintains that medical reports concluding that Plaintiff's disability was work-related and Plaintiff's identification of several traumatic events, which occurred while he was on duty, constitute overwhelming evidence that his disability was work-related. Thus, Plaintiff argues that the great weight of evidence indicated that Plaintiff's disability was work-related.
The Board evaluated Plaintiff's disability under section 4(3)(e) of its Rules and Regulations, which reads as follows:
 (e) For disabilities for job related stress, the applicant must demonstrate that:
 (1) The condition which is alleged to be the cause of the incapacity is a result of emotional strain and tension greater than the day-to-day emotional strain and tension which all employees of the Police and/or Fire Department experience in the work place;
 (2) the condition is directly and exclusively the result of the workplace; and
 (3) the condition is the result of some objectively dramatic stressful event, not merely the result of an event or condition which the employee considers subjectively to be stressful.
See City of Warwick Board of Public Safety Rule and RegulationsRegarding Disability Pensions, § 4(3)(e). This standard utilized by the Board is clearly derived from several Rhode Island Supreme Court Cases dealing with evaluations of psychic and stress related disabilities.See Frost v. City of Newport, 706 A.2d 1354 (R.I. 1998) (employee must prove that an incapacity was directly and exclusively work-related);Amick v. National Bottle, 507 A.2d 1352 (R.I. 1986) (employee must demonstrate that the cause of his depression was exclusively work-related); Seitz v. L R Industries, Inc., 437 A.2d 1345 (R.I. 1981) (stress must be greater than that experienced on a day-to-day basis and must be objectively traumatic).
In determining that Plaintiff's injury was not directly and exclusively work-related, the Board considered the reports of the two doctors who reviewed Plaintiff's updated medical files: Doctors Harrop and Franek. These reports were conflicting. Dr. Harrop did not consider the disability to be work-related, while Dr. Franek did (Franek September 18, 2000, Medical R. at 3 and Harrop August 23, 2000, Medical R at 2). The reports of both Doctors were reviewed by four other doctors: those on the Board's medical panel and the Board's medical consultant. All four reviewing Doctors agreed with Dr. Harrop that the disability was not work-related (Decision 2 at 1).
The finder of fact, when faced with conflicting expert testimony, is free to accept one opinion over the other. See Lowry v. Faraone,500 A.2d 950, 952 (R.I. 1985) (finding no fault when the trial judge accepted the testimony of one expert over that of another); see alsoCosta v. Registrar of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988) (a court must not substitute its judgment for that of an agency regarding the credibility of witnesses or weight of the evidence). In the present case, the Board was presented with two competent, but differing, medical opinions, and it decided which one to accept and which to reject. The opinion of an independent medical examiner, approved by four other doctors, constitutes competent evidence on which the Board could base its decision. See Matthews v. Eldridge, 424 U.S. 319, 344 (1976) (noting that decisions regarding the continuation of disability benefits turn, in most cases, upon standard and unbiased medical reports by physician specialists). Thus, legally competent evidence exists to support the Board's decision.
The Board also determined that the emotional strain and tension that Plaintiff claims caused his disability was not greater than the day-to-day emotional strain or tension which police officers experience. The Board noted that the Rhode Island Supreme Court in Seitz v. L RIndustries, Inc., referenced several traumatic events which courts in other states found to be compensable work-related disabilities. These included a secretary discovering the body of her boss, who had committed suicide; an industrial worker who witnessed a co-worker's hand severed in a machine press; and a construction worker who watched a co-worker fall off scaffolding to his death. Seitz, 437 A.2d at 1348. Noting that the profession of a police officer involves greater day-to-day tensions than most other jobs, the Board found that the traumatic events witnessed by Plaintiff were not comparable to those referenced inSeitz (Decision 2 at 4). The Board also specifically determined that the Plaintiff's viewing of a mangled body at the scene of a car accident was not objectively traumatic, considering the nature of a police officer's duty. Id.
Deference is given to a board's interpretation of the statutes or regulations that it is authorized to administer. See Pawtucket PowerAssociates Limited Partnership v. City of Pawtucket, 622 A.2d 452, 456
(R.I. 1993) (deference owed to agency's interpretation of statute it was entrusted to enforce); Environmental Scientific Corporation v.Durfee, 621 A.2d 200, 208 (R.I. 1993) (an agency's interpretation of statute, regulation, and public policy given great weight). The Board had before it competent evidence to support its decision that Plaintiff's disability was not directly and exclusively work-related and that Plaintiff's strain and tension was not greater than that of other police officers. Therefore, this Court will not substitute its judgment for that of the agency on whether Plaintiff's disability was directly and exclusively work-related. Accordingly, the Board's decision was supported by the reliable, probative, and substantial evidence of record, was not clearly erroneous, and was not affected by error of law.
 CONCLUSION
After a review of the entire record, this Court finds that the Board's decision was not in violation of statutory provisions or affected by error of law. Additionally, this Court finds that the Board's decision was not clearly erroneous in view of the substantial evidence on the record, or arbitrary or capricious, or characterized by an abuse of discretion. Substantial rights of the Plaintiff have not been prejudiced.
Counsel shall submit the appropriate judgment for entry.
[1] These events were described in detail in the medical reports certified as part of the record to this Court. In his brief, Plaintiff only describes the thirteen-year-old girl's suicide and his work with juvenile molestation victims as examples of events that contributed to his disability.
[2] Sec. 52-76, in pertinent part, reads as follows: "Whenever an Officer or member of the permanent police department shall become unfit to perform active duty by reason of mental or physical infirmity, or other causes, the board of public safety of the city may place said officer or member on the pension list . . ."